## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **ED TOBERGTE ASSOCIATES COMPANY d/b/a GEAR 2000, an Ohio corporation,** | ) ) ) ) | |
|     **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Case No.  2:08-cv-02290-JWL-GLR** |
| **RUSSELL CORPORATION, a Delaware corporation, n/k/a RUSSELL BRANDS, LLC, a Delaware Limited Liability Company** | ) ) ) ) | |
|     **Defendant.** | | |

## RESPONSE IN OPPOSITION TO MOTION TO QUASH

Defendant Russell Brands LLC ("Russell"), files this response to Plaintiff's Motion to Quash (Doc. 43) and requests the Court to enter an order compelling the prosecuting patent attorney Ginnie Derusseau to testify at a deposition in compliance the deposition subpoena that Russell served on her.  First and most importantly, her own client, Plaintiff Gear 2000, identified Ms. Derusseau as a fact witness on its Initial Disclosures.  *See* Exhibit A, Plaintiff's Initial Disclosures. This alone justifies taking Ms. Derusseau's deposition.  Further, the discovery sought is highly relevant to Russell's inequitable conduct defense to Plaintiff's patent infringement claim.

### INTRODUCTION

This case is a patent infringement action in which Plaintiff Ed Tobergte Associates d/b/a Gear 2000 ("Gear 2000") seeks to enforce U.S. Patent No. 7,168,104 against Russell.  The patent relates to certain alleged improvements in football shoulder pads, and Gear 2000 asserts that

Russell through its division Bike Athletics has manufactured and sold shoulder pads that infringe the patent.  *See generally* Complaint (Doc. 1).

In its Answer, Russell pled the defense of inequitable conduct, among other defenses. Answer (Doc. 7), p. 5.  "Applicants for patents are required to prosecute patent applications in the PTO with candor, good faith, and honesty. This duty extends also to the applicant's representatives. A breach of this duty constitutes inequitable conduct."  *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995) (citations and footnote omitted).  "Inequitable conduct includes affirmative misrepresentation of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive."  *Id.*  "Under PTO rules, the duty to disclose information material to patentability rests on the inventor, on each attorney or agent who prepares or prosecutes an application and on every other individual who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, with the assignee, or with anyone to whom there is an obligation to assign the application."  *Id.* at 1178 n.6 (citing 37 C.F.R. § 1.56).

Public records show, and Ms. Derusseau does not deny, that she is the attorney who primarily prosecuted the '104 Patent.

## LEGAL STANDARD

Rule 26 allows for discovery of nonprivileged matter that is relevant to any party's claim or defense.  Fed. R. Civ. Pro. 26(b)(1).  Rule 26 also requires each party to identify persons likely to have discoverable information that the party intends to use to support a claim or defense.  In this case, Gear 2000 identified Ms. Derusseau on its Initial Disclosures as a person "knowledgeable concerning the '104 Patent, and the enforcement of the '104 Patent."  *See* Exhibit A.  This disclosure itself establishes that Russell is entitled to her deposition to discover

all nonprivileged information relevant to any claim or defense related to the '104 Patent (which necessarily includes its preparation and prosecution) and its enforcement.

The fact that Ms. Derusseau is an attorney does not exempt her from giving a deposition (especially where her client has identified her as a fact witness). "The Federal Rules of Civil Procedure do not themselves exempt attorneys from being a source of discoverable facts. . . . Not only are attorneys not exempt from this rule, discovery from them is clearly contemplated." *United Phosphorous, Ltd. v. Midland Fumigant*, 164 F.R.D. 245, 247-48 (D. Kan. 1995). Gear 2000 faults Russell for not having submitted proof of several preliminary showings before serving Ms. Derusseau with a subpoena. *See* Motion to Quash (Doc. 43), p. 3. Such a showing, however, is not required. "Had the Court or Congress intended to engraft a preliminary showing when deposition discovery was sought from attorneys, such an exception would likely have been found in Rule 30 or otherwise within the Rules of Civil Procedure." *United Phosphorous*, 164 F.R.D. at 248. "Under the Federal Rules of Civil Procedure, discovery is allowed when served in compliance with the Rules unless a timely objection is made. Unless otherwise specifically shifted under the Rules, the burden of objecting to proposed discovery is on the party from whom discovery is sought." *Id.*

Gear 2000 contends that *Boughten v. Cotter Corp.*, 65 F.3d 823, 829 (10th Cir. 1995), shifts the burden to Russell to establish three factors, first enunciated in *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986), before the deposition of Ms. Derusseau can proceed: "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Boughten*, 65 F.3d at 829. While those factors are easily met in this case, Russell respectfully submits that Gear 2000 has misconstrued *Boughton* in stating that these

three criteria must be met in order for the deposition to proceed.  While the *Boughton* court looked to the Eighth Circuit's *Shelton* factors, the court explicitly stated that "[o]ur affirmation of the protective order in the case before us is based solely on the discretion of the trial judge under Rule 26(c)."  *Id.* at 829 n.7.  The *United Phosphorous* court later explained:

> The holding in *Boughton* is narrow. In *Boughton*, the court found that it was not an abuse of discretion to preclude the deposition of opposing counsel when required to protect a party from an unnecessary burden. The court does not suggest that the criteria it employed must be applied in every case in which the opposing counsel's deposition is sought. Nor does the court declare that the burden under Rule 26(c) should be shifted to the party seeking the deposition by virtue of the fact that the proposed deponent is opposing counsel. Such would be inconsistent with the express provisions of Rule 26(c).

*United Phosphorous*, 164 F.R.D. at 249.  A more recent Eighth Circuit decision clarified that the *Shelton* factors apply only when (1) when trial and/or litigation counsel are being deposed, and (2) when the questioning would expose litigation strategy in the pending case.  *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 729-30 (8th Cir.2002).  While Ms. Derusseau may be litigation counsel in this case, Russell is not seeking discovery of Gear 2000's litigation strategy. Rather, Russell is seeking discovery of facts that go directly to its inequitable conduct defense.

"When a party employs counsel to represent it in a case where an attorney has played a role in the underlying facts, both the attorney and the party have every reason to expect that the attorney's deposition may be requested."  *United Phosphorous*, 164 F.R.D. at 249.   Here, Ms. Derusseau prosecuted the application that led to the '104 Patent and therefore played a critical role in the underlying facts of the case.  Russell has pled the affirmative defense of inequitable conduct, based at least in part on the actions and omissions of Ms. Derusseau in prosecuting the '104 Patent.  Plaintiff should expect the deposition of Ms. Derusseau to be taken.

4

Further, taking the depositions of prosecuting counsel is common in patent cases. *See Vita-Mix Corp. v. Basic Holdings, Inc.*, 2007 WL 2344750 (N.D. Ohio 2007) (denying motion for protective order to prevent taking of prosecuting attorney's deposition and denying motion to quash subpoena *duces tecum* served on attorney; and stating that "depositions of attorneys in patent infringement and invalidity suits are not unusual. Moreover, such depositions need not be limited to issues relevant to inequitable conduct . . . ."); *V. Mane Fils, S.A. v. International Flavors and Fragrances Inc.*, 2008 WL 3887621, at *4 (D.N.J. 2008) (denying patentee's motion to quash subpoena for testimony and documents accused infringer served on the prosecuting patent lawyer and stating that "patent prosecutors are regularly deposed in subsequent patent litigation."). For example, in *Hay & Forage Indus., Inc. v. Ford New Holland, Inc.*, 132 F.R.D. 687, 690 (D. Kan. 1990), this Court denied a plaintiff patentee's motion for protective order seeking to prevent the deposition of its patent counsel, where the defendant pled the defense of inequitable conduct. The Court recognized that the patent lawyer was the best source of first-hand knowledge regarding his own dealings with the Patent Office that formed the basis of the defense. Other courts also have permitted the deposition of patent prosecution counsel, even where the same lawyer is serving as trial counsel, in connection with an inequitable conduct defense. *See, e.g., Plymouth Industries, LLC v. Sioux Steel Co.*, 2006 WL 695458 (D. Neb. 2006); *aaiPharma, Inc. v. Kremers Urban Dev. Co.*, 361 F. Supp. 2d 770 (N.D. Ill. 2005); *Alcon Laboratories, Inc. v. Pharmacia Corp.*, 225 F. Supp. 2d 340 (S.D.N.Y. 2002); *Amicus Comms. v. Hewlett-Packard Co., Inc.*, 1999 WL 33117227, at *2 (D.D.C.1999); *Environ Prods. Inc. v. Total Containment Inc.*, 41 U.S.P.Q.2d 1302 (E.D. Pa. 1996).

Russell respectfully submits that the legal standard applicable to the instant motion is that the discovery should proceed, unless the movant Ms. Derusseau carries her burden of

demonstrating good cause as to why the Court should exercise its discretion under Rule 26(c) to preclude discovery of information relevant to the claims and defenses in this action.

ARGUMENT

**I.    The Motion to Quash Should Be Denied Because the Plaintiff Gear 2000 Identified Ms. Derusseau as a Fact Witness with Discoverable Knowledge in its Initial Disclosures.**

As noted at the outset of this Response, the Plaintiff itself listed Ms. Derusseau as a fact witness.  *See* Exhibit A.  For this reason alone, Russell should be able to take her deposition regarding any nonprivileged information she has relevant to any claim or defense in the action.

**II.    Ms. Derusseau Has Failed to Show Good Cause Why Her Deposition Should Not Go Forward.**

In her Motion to Quash, Ms. Deruseau accuses Russell of "embark[ing] on a make-work campaign which seeks to harass and burden Gear 2000's counsel" and contends that the deposition is meant "to harass, burden, and run-up costs for both parties."  Mem. in Support of Motion to Quash (Doc. 44), pp. 3, 4.  These accusations are without merit.  Ms. Derusseau has presented absolutely no evidence that the deposition is meant to harass her, as opposed to discover information directly relevant to a defense in this action. *Cf. Genal Strap, Inc. v. Dar*, 2006 WL 525794, at *3 (E.D.N.Y. 2006) ("The Court also rejects Raskin's and defendants' claim that Raskin was subpoenaed solely for harassment purposes. Voguestrap has asserted the affirmative defense of inequitable conduct which puts Raskin's actions and mental impressions directly at issue in this litigation. Defendants have not presented any evidence to demonstrate a more nefarious purpose.").

Ms. Derusseau's empty accusations do not overcome the substantial authority from multiple jurisdictions, including from this Court, that the deposition of the attorney who prosecuted the patent in suit is permissible under these circumstances.  Ms. Derusseau has failed

6

to demonstrate good cause as to why she and Gear 2000 should be allowed to shield nonprivileged, relevant information harmful to the plaintiff's case from discovery. Nevertheless, Russell will address each of the *Boughton* factors, should the Court choose to consider them.

### III. The Motion to Quash Should Be Denied Because Even if *Boughton* Applies, Each *Boughton* Factor Is Satisfied.

#### A. No Other Means Exist to Obtain the Information than to Depose Opposing Counsel.

Decisions made by Ms. Derusseau in failing to disclose material prior art to the Patent Office during prosecution of the application for the '104 Patent are directly relevant to Russell's inequitable conduct defense. She is the *only* person with first-hand knowledge of her own actions and inactions. Moreover, this information necessarily includes testimony regarding her state of mind. *See Environ Prods.*, 41 U.S.P.Q.2d at 1306 ("The affirmative defense of inequitable conduct makes [the attorney's] mental impressions . . . an issue in this litigation"). The only reasonable discovery means for questioning a witness about her state of mind while making certain actions and omissions with respect to numerous documents is an oral examination of that witness via deposition. No other means exists to obtain this type of information. *See Hay & Forage*, 132 F.R.D. at 691-92; *aaiPharma*, 361 F. Supp. 2d at 778 (deposition was only manner for defendants to discover patent prosecution counsel's knowledge of undisclosed prior art); *Alcon*, 225 F.Supp.2d at 343 (attorney was best, and in some cases, the only source for information because of his role in the patent's prosecution); *Environ Prods.*, 41 U.S.P.Q.2d at 1306 (deposition of patent prosecution counsel was only way to discover his mental impressions relevant to inequitable conduct defense).

  **1.**  **Gear 2000 Has Refused to Provide the Information in Response to Other Methods of Discovery.**

  Russell has, however, served interrogatories on Gear 2000 seeking to elicit information on the inequitable conduct defense. Russell requested that Gear 2000 identify all material prior art known to the inventor and the prosecuting attorney, and when that prior art became known to them. *See* Exhibit B, Russell's First Interrogatories and Requests for Production to Gear 2000 and Responses thereto, Int. No. 21. When Gear 2000 did not answer the question posed in Interrogatory No. 21 at all, Russell requested correction and supplementation. *See* Exhibit C hereto, Letter of P.Sykes to S.Pederson, March 11, 2009. Gear 2000 then served a supplemental response, which, for the reasons explained below, is incomplete and demonstrates why interrogatories are inadequate to elicit the necessary information.

  In its supplemental response, Gear 2000 stated that the prior art shown on the face of the '104 Patent was the only relevant, material prior art known to Ms. Derusseau at the time she was prosecuting the patent application. S*ee* Exhibit D, Gear 2000 Supplemental Response to Interrogatory No. 21. Gear 2000 made the same assertion in the present motion. S*ee* Mem. in Support of Motion to Quash, p. 3-4 ("Indeed, Gear 2000 has already identified for Defendant all relevant and material 'prior art' known by Ms. Derusseau prior to the registration of the '104 Patent."). These responses simply beg the question, however. At the same time Ms. Derusseau was prosecuting the '104 Patent application, she was also prosecuting another patent application for Mr. Tobergte on football pads, United States patent application number 11/059,769 (the "Parallel Application"). *See* Exhibit E (Transmittal Sheet, Power of Attorney, Information Disclosure Statements filed in Parallel Application, and Prosecution Index). The Information Disclosure Statements from the Parallel Application show that Ms. Derusseau was aware of numerous prior art references related to football pads, some of which are highly material to the

'104 Patent application.  *See id.*  However, despite her knowledge of them in conjunction with related work for Mr. Tobergte, Ms. Derusseau utterly failed to disclose these references to the Patent Office during prosecution of the '104 Patent application.[1]  The relevant question is, of course, *why* did she fail to disclose these references – a question that only she can answer.

By way of example (and for the sake of brevity this is only one example of many), several claims in the '104 Patent relate to a shoulder pad having "cap pads" extending from the shoulder over the upper arm of the player.  An adjustable strap allows the cap pads to be adjusted up and down the length of the arm (to accommodate different sized players), and the lower end of the cap pad is secured to the player's bicep area by an elastic strap.  *See* Exhibit F, U.S. Patent 7,168,104, claims 1-3.  The shoulder pad of the '104 Patent includes layers of breathable foam sandwiched around a hard inner core to allow airflow substantially throughout the pads.  *See id.* An Information Disclosure Statement in the Parallel Application shows that United States Patent No. 5,173,964, to Ball, (the "Ball Patent") was known to Ms. Derusseau at the same time she was prosecuting the '104 Patent Application.  *See* Exhibit E, Information Disclosure Statement dated 2/28/2005.  The Ball Patent discloses a shoulder pad having a similar cap pad structure (referred to as a "bicep pad or protector") attached to the shoulder pad, which can be adjusted up

---

[1]    That Ms. Derusseau was under a duty to disclose information material to patentability learned from the Parallel Application is clear.  "All individuals covered by [37 C.F.R] § 1.56 . . . have a duty to disclose to the Patent and Trademark Office *all* material information they are aware of, or reasonably should have been aware of ..., *regardless of the source* of or how they became aware of the information. . . . Such individuals may be or become aware of material information from various sources such as . . . prior or *copending United States patent applications . . . ."  McKesson Information Systems v. Bridge Medical, Inc.*, 487 F.3d 897 (Fed. Cir. 2007) (citations and quotations omitted) (emphasis in original); *LG Philips LCD Co., Ltd. v. Tatung Co.*, 2007 WL 2908177 (D. Del. 2007) (granting accused infringer's motion to compel deposition of the attorney who prosecuted one of the patentee's non asserted patents to address an apparent discrepancy between representations regarding a specific prior art reference made by the patentee in the course of the prosecution of the nonasserted patent and the patentee's litigation position on the patents-in-suit regarding that same prior art reference).

9

and down the player's arm via an adjustable strap and secured to the player's bicep area by another strap. *See* Exhibit G, Ball Patent, Figs. 2A-2B (items 70, 72; Fig. 3 (adjustable strap); Column 5, lines 3-8, 62-65. This alone makes the Ball Patent material. In addition, the Ball shoulder pad uses a "sandwich structure" including perforated foam padding, "such that the whole structure as illustrated is made to breathe." *Id.* Column 6, lines 5, 19-20; Fig. 4.

Under any reasonable view, the Ball Patent is relevant, material prior art to the '104 Patent. Although she was fully aware of the Ball Patent and chose to disclose it in the Parallel Application (which related to breathable shoulder pads), she chose not to disclose it to the Patent Office in the '104 Patent application. Unless Gear 2000 concedes that the foregoing constitutes inequitable conduct, Russell is entitled to a deposition to explore this decision and others made by Ms. Derusseau.

Remarkably, Russell in *its* responses to Gear 2000's Interrogatories, had identified each of the relevant references known to Ms. Derusseau as shown by these publicly available records, including the Ball Patent. *See* Exhibit H, Gear 2000 Interrogatories and Requests for Production, and Russell's Responses thereto, Int. No. 8 (subparts 3, 5). Even with this information in hand, and even after Russell requested Gear 2000 supplement its interrogatory response, Gear 2000 identified only those references shown on the face of the '104 Patent as being relevant and material prior art references known by Ms. Derusseau. This interrogatory response, of course, begs a number of questions that can only be appropriately explored via deposition: What technical fields did Ms. Derusseau decide the "prior art" should include and how did she come to that decision? What criteria did Ms. Derussea use to evaluate relevancy and materiality of the prior patents that she reviewed? Why did Ms. Derusseau choose not disclose certain prior art references to the Patent Office, thus depriving the Patent Office of even the opportunity to decide

materiality?  Gear 2000's manifestly incomplete interrogatory responses, even as supplemented, demonstrate why a deposition is necessary.

Russell also served requests for production on Gear 2000 for documents related to the preparation and prosecution of the '104 Patent and related patent applications, including attorney files.  Gear 2000 responded that nonprivileged documents would be produced, if any exist.  *See* Exhibit B, Russell's First Interrogatories and Requests for Production, Req. Nos. 7-10.  Gear 2000, however, *has not produced any documents* responsive to these requests, nor has it produced a privilege log.  Russell is entitled to a deposition of Ms. Derusseau to determine the existence, or nonexistence, of documents relevant to the prosecution of the '104 Patent.

In addition to the subpoena for her deposition, Russell also served a document subpoena directly on Ms. Derusseau and her firm seeking documents related to the prosecution of the '104 Patent application, and related patents or patent applications, including the Parallel Application.  Ms. Derusseau responded only with objections (Doc. 45).  She has not produced any documents.  Although Ms. Derusseau objected to almost every document request on grounds of the attorney-client privilege and the attorney work product doctrine, she has not produced a privilege log.  She also objected to several of the requests on the basis that the same documents had been requested of her client Gear 2000.  But as noted above, Gear 2000 has not produced responsive documents either.  Russell will be filing a separate motion to compel to enforce this subpoena.

### 2.  Russell Cannot Serve Interrogatories and Requests to Admit on Ms. Derusseau.

Because Ms. Derusseau is a non-party, Russell cannot serve interrogatories and requests to admit on her.  Fed. R. Civ. Pro. 33;  *Alcon*, 225 F.Supp.2d at 343-44 (patent prosecution counsel not subject to interrogatories under Federal Rules because he is not a party to the action); *Plymouth Industries, LLC v. Sioux Steel Co.*, 2006 WL 695458 at *5 (same).

As can be seen, Russell has exhausted other means of discovery to attempt to obtain relevant information to support its inequitable conduct defense. At each turn, Gear 2000 has construed interrogatories and requests for production extremely narrowly and provided little, if any, substantive information. Gear 2000's efforts to prevent discovery of relevant information detrimental to its case should not be countenanced. *See aaiPharma*, 361 F. Supp. 2d at 773 ("It would be unfair to accused patent infringers if patentees could shield potentially harmful discovery related to their knowledge of prior art merely by using their prosecution counsel, or patentability opinion counsel, as trial counsel").

### B. The Information Sought Is Relevant and Nonprivileged.

The second *Boughton* factor is that the information sought is relevant and non-privileged. Russell primarily seeks information related to its inequitable conduct defense. The discussion above establishes the relevancy of that information. *See also aaiPharma*, 361 F. Supp. 2d at 774 n.3 (discovery from attorneys involved in prosecution of patents in suit is directly relevant to inequitable conduct). In addition, Russell intends to ask questions concerning the topics for which Gear 2000 disclosed Ms. Derusseau as a witness on its Initial Disclosures. Russell also will seek to discover any other nonprivileged information relevant to any claim or defense in this case known to Ms. Derusseau. *See United Phosphorous*, 164 F.R.D. at 248 ("[U]nder Rule 30 there is no requirement that the notice to take depositions include an identification of the subject matters upon which the witness is to be deposed, as is required when the notice identifies a corporation as a deponent."); *see also Vita-Mix Corp.*, 2007 WL 2344750, at *2 n.2 ("Plaintiff asserts that the testimony taken from Attorney Greive must necessarily be limited to the subject matter encompassed by the documents requested in the subpoena *duces tecum*. Plaintiff provides the Court no support for this assertion and the Court finds the argument to be without merit.").

Russell does not seek information properly protected by the attorney-client or work product privileges. However, "[c]ommunications of 'technical information' between client and attorney for the purpose of submission to the Patent Office are not privileged." *Genal Strap, Inc. v. Dar*, 2006 WL 525794 at *3 (E.D. N.Y. 2006) (citing *In re Minebea Co., Ltd.*, 143 F.R.D. 494, 502 (S.D.N.Y.1992). " '[W]ork performed by an attorney to prepare and prosecute a patent application does not fall within the parameters of the work-product protection' because it is not created 'in anticipation of litigation.' " *Id.* (quoting *Amicus Comm'n*, 1999 WL 33117227, at *2; citing *In re Minebea*, 143 F.R.D. at 499; *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 145 F.R.D. 298, 302 (E.D.N.Y.1992)); *see also Plymouth Industries*, 2006 WL 695458 at *4-5 (concurring with *Genal Strap* and quoting the decision at length).

**C.  The Information Is Crucial to the Preparation of the Case.**

The third Boughton factor is that the information sought is crucial to the preparation of the case. That factor is met here. The '104 Patent may be rendered unenforceable if Russell proves that Gear 2000 procured it by inequitable conduct. This is a crucial defense, to which the prosecuting attorney's testimony is itself crucial. *See Plymouth Industries*, 2006 WL 695458 at *5 (" '[T]he prosecuting attorney's mental impressions "are crucial to any claim of inequitable conduct in a patent infringement action.' " (quoting *Alcon Labs*, 225 F. Supp. 2d at 344 (S.D.N.Y.2002)); *Genal Strap*, 2006 WL 525794 at *2 (same). There is no other source for first-hand knowledge of Ms. Derusseau's mental impressions than Ms. Derusseau herself.

CONCLUSION

For the reasons stated above, the Motion to Quash should be DENIED.

/s/ Russell S. Jones

Russell S. Jones, Jr. D. Kan. #70814
Richard P. Stitt KS #14268
Joshua M. McCaig MO #56059
SHUGHART THOMSON & KILROY, P.C.
120 West 12th Street, Suite 1600
Kansas City MO 64105
Telephone: 816-421-3355
Facsimile: 816-374-0509
rjones@stklaw.com
rstitt@stklaw.com
jmccaig@stklaw.com

OF COUNSEL
Paul M. Sykes
Nathan W. Johnson
Edward J. Everitt
Bradley Arant Boult Cummings LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2104
Telephone: (205) 521-8000
Fax: (205) 521-8800
psykes@babc..com
njohnson@babc.com
eeveritt@babc.com

ATTORNEYS FOR DEFENDANT
RUSSELL CORPORATION

2492579.01

## CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Ginnie C. Derusseau
James J. Kernell
Erickson, Kernell, Derusseau & Kleypas, LLC
4400 College Boulevard, Suite 130
Overland Park, KS 66211
Phone: (913) 339-9666
Fax:    (913) 339-6061
ginnied@usapatlaw.com

John P. Passarelli, NE #16018
Stephen J. Pedersen, NE #22465
Kutak Rock LLP
1650 Farnam Street
Omaha, NE 68102
Telephone:  (402) 346-6000
Facsimile:  (402) 346-1148
john.passarelli@kutakrock.com
stephen.pedersen@kutakrock.com

*Attorneys for Plaintiff Ed Tobergte Associates*
*Company d/b/a Gear 2000*

                    */s/ Russell S. Jones*
                    Attorney for Defendant

2492579.01