IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ED TOBERGTE ASSOCIATES COMPANY )
d/b/a GEAR 2000, an Ohio corporation, )
                                              )
               Plaintiff, )
                                              )
v.                                          )      Case No. 2:08-cv-02290-JWL-GLR
                                              )
RUSSELL CORPORATION, a Delaware )
corporation, n/k/a RUSSELL BRANDS )
LLC, a Delaware Limited Liability )
Company,                             )
                                              )
                       Defendant.         )

## PLAINTIFF'S CLAIM CONSTRUCTION BRIEF

      Ed Tobergte Associates Company d/b/a Gear 2000 ("Gear 2000") submits the following brief in support of its assertion that no construction of the claims of the patent in suit ("Claims") is necessary.

## I.      INTRODUCTION

      Gear 2000 instituted this lawsuit against Russell Brands, LLC ("Defendant") asserting, among other claims, that certain of Defendant's football shoulder pads infringe upon Plaintiff's U.S. Patent No. 7,168,104 (the "'104 Patent") (attached hereto as Exhibit A). Defendant asserts that nine terms and phrases require construction by this Court. Defendant's proposed construction (attached hereto as Exhibit B) unnecessarily seeks to alter, narrow and render ambiguous the '104 Patent's claims terms, which are clear on their face, and, therefore, require no construction. In fact, Defendant's proposed constructions are so strained to be internally inconsistent.

Gear 2000 asserts no construction is necessary because the claims of the '104 Patent are written in clear and unambiguous English (Gear 2000's Proposed Claim Construction is attached hereto as Exhibit C). The plain and clear language of the claims of '104 Patent require no construction. There is no need for this Court to hold any evidentiary hearing on claim construction, nor is there any need to resort to extrinsic evidence to interpret the Claims. A review of the '104 Patent, makes clear that the Federal Circuit's heavy presumption that a claim term carries its ordinary and customary meaning should not be disturbed.

**OVERVIEW OF '104 PATENT**

The '104 Patent relates to an improved football shoulder pad comprising, among other things, a foam body having a hard inner layer and first and second layers of breathable foam secured to either side of the hard inner layer, with the hard inner layer having spaced apart openings. The breathable foam can be, among other things, "open" cell foam or "closed" cell foam, the latter containing perforations, each allowing air to flow through. The unique structure and combinations of materials provides the athlete with a lightweight and breathable football shoulder pad.

Further, the '104 Patent discloses a football shoulder pad that can include adjustable and selectively removable cap pads attachable to the shoulder portion of the football pads. The cap pads are secured to the athletes arm to ensure the padding moves with the arm regardless of the direction of movement.

## II.    ARGUMENT

**A.    LAW OF CLAIM CONSTRUCTION**

### 1.    Standard of Review

The task of interpreting the claims at issue in this case is a question of law for this Court to determine. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

### 2.    Intrinsic Evidence

Of primary importance to any claim construction are the words of the claims themselves, the patent specification and the prosecution history. This "intrinsic evidence" is derived from the public record. *See Bell Atl. Network Servs., Inc. v. Covad Communs. Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001).

#### a) Claims

In construing the claims at issue, the Court must first look to the claim language of the patent. It is a "'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). Courts construing patent claims must first "look to the words of the claims themselves . . . to define the scope of the patented invention." *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). As the Supreme Court explained, the claims of a patent are "of primary importance, in the effort to ascertain precisely what it is that is patented." *Merrill v. Yeomans*, 94 U.S. 568, 570, 24 L. Ed. 235 (1976).

The words of a claim are "generally given their ordinary and customary meaning." *Phillips*, 415 F.3d at 1312 (quoting *Vitronics Corp.*, 90 F.3d at 1582). The ordinary and customary meaning of a claim term is "the meaning that the term would have to a person of

ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1313. As the *Phillips* court noted, this is the baseline from which to begin claim interpretation: "the claims themselves provide substantial guidance as to the meaning of particular claim terms." *Id.* at 1314. An interpretation of one claim that renders another claim meaningless is disfavored. *In re Cruciferous Sprout Litig.*, 301 F.3d 1343, 1349 (Fed. Cir. 2002).

In particular, the context in which a term is used in the asserted claim is highly instructive in construing the claim, and claim terms should not be interpreted in isolation. *Callicrate v. Wadsworth Mfg., Inc.*, 427 F.3d 1361, 1366 (Fed. Cir. 2005). Likewise, other claims found within the same patent, and the usage of certain terms within such claims or differences between claims, illuminate the claim's meaning. *In re Cruciferous Sprout Litig.*, 301 F.3d at *Id.*

A claim should not be construed to leave words without meaning or influence upon the scope of the claim. The patentee is presumed to have intended every word chosen for use in a claim to have a specific function in adding to the meaning of that claim. *See Harris Corp. v. IXYS Corp.*, 114 F.3d 1149 (Fed. Cir. 1997); *see also Elekta Instrument S.A. v. O.U.R. Scientific Intern., Inc.*, 214 F.3d 1302, 1307 (Fed. Cir. 2000). "Claims can only be construed to preserve their validity where the proposed claim construction is 'practicable,' is based on sound claim construction principles, and does not revise or ignore the explicit language of the claims." *Generation II Orthotics Inc. v. Medical Technology Inc.*, 263 F.3d 1356, 1365 (Fed. Cir. 2001). "It is also fundamental that the text of the claim must be closely followed: '[e]ach element contained in a patent claim is deemed material to defining the scope of the patented invention.'"

*K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1367 (Fed. Cir. 1999), *citing Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 29 (1997).

A term used in several claims is construed as having the same meaning in each of the claims. *See, e.g.*, *Georgia-Pacific Corp. v. United States Gypsum Co.*, 195 F.3d 1322, 1331 (Fed. Cir. 1999) ("Unless the patent otherwise provides, a claim term cannot be given a different meaning in the various claims of the same patent"); *AbTox Inc. v. Exitron Corp.*, 131 F.3d 1009 (Fed. Cir. 1997) (term "*gas-confining chamber*" must be construed as having the same meaning in two sets of claims in same patent).

However, when a term is used twice in a claim to refer to different items, its use elsewhere must be consistent with both usages. *Digital Biometrics Inc. v. Identix Inc.*, 149 F.3d 1335 (Fed. Cir. 1998) (term "*arrays*" used twice in a claim to refer to different data sets must have a meaning consistent with both contexts of its use).

As is expected, a patentee will write different claims having different scope, with some narrower than others. "Where some claims are broad and others narrow, the narrow claim limitations cannot be read into the broad whether to avoid invalidity or to escape infringement." *Deere & Co. v. International Harvester Co.*, 658 F.2d 1137, 1141 (7th Cir. 1981), *cited with approval in Kalman v. Kimberly-Clark Corporation*, 713 F.2d 760, 770 (Fed. Cir. 1983).

**b) Specification**

Courts may resort to a specification definition when "the term or terms chosen by the patentee so deprive the claim of clarity that there is no means by which the scope of the claim may be ascertained from the language used." *Johnson Worldwide Associate, Inc. v. Zebco Corp.*, 175 F.3d 985, 990 (Fed. Cir. 1999); *citing Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*, 114 F.3d 1547 (Fed. Cir. 1997) (looking past claim language because of lack of clarity),

*overruled on other grounds* by *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448 (Fed. Cir. 1998) (*en banc*); *J.T. Eaton & Co. v. Atlantic Paste & Glue Co.*, 106 F.3d 1563, 1568 (Fed. Cir. 1997) (because "[the disputed claim term] is a term with no previous meaning to those of ordinary skill in the art[,] [i]ts meaning, then, must be found [elsewhere] in the patent"); *North Am. Vaccine, Inc. v. American Cyanamid Co.*, 7 F.3d 1571, 1576 (Fed. Cir. 1993) (using the specification for guidance "[w]hen the meaning of a claim term is in doubt"); *E.I. du Pont de Nemours v. Phillips Petroleum Co.*, 849 F.2d 1430, 1433 (Fed. Cir. 1988) (the written description can supply understanding of unclear claim terms, but should never trump the clear meaning of claim terms).

"Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips,* 415 F.3d at 1313. While claims "must be construed so as to be consistent with the specification, of which they are a part . . ." *Merck & Co. v. Teva Pharms, USA, Inc.,* 347 F.3d 1367 1371 (Fed. Cir. 2003), the "particular embodiments appearing in a specification will not be read into the claims when the claim language is broader than such embodiments." *Electro Med. Sys. S. A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1054, 32 U.S.P.Q.2d 1017, 1021 (Fed. Cir. 1994).

"[I]t is improper to limit the scope of a claim to the preferred embodiment or specific examples disclosed in the specification." *Broadcast Innovation, LLC v. Echostar Communications Corp.*, 240 F. Supp.2d 1127, 1132 (D. Colo. 2003), *citing to Ekchian v. Home Depot, Inc.*, 104 F.3d 1299, 1303 (Fed. Cir. 1997). "A patentee need not describe in the specification 'every conceivable and possible future embodiment of his invention.'" *Id. Citing to CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002). Indeed, absent some ambiguity in the claim language, or a specific definition used by the inventor to replace the

ordinary meaning of claim language, no basis can exist for adding to a claim term a limitation shown in the specification. *See, e.g. Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 375 F.3d 1341, 1350-1351 (Fed. Cir. 2004). "[I]t is axiomatic that . . . the court will not limit claim terms to a preferred embodiment described in the specification." *SanDisk Corp. v. Memorex Products, Inc.*, 415 F.3d 1278, 1286 (Fed. Cir. 2005).

The specification may define claim terms expressly, or by implication, "such that the meaning may be found in or ascertained by a reading of the patent documents." *Bell Atl.*, 262 F.3d at 1268 (citations and quotations omitted). "[T]he claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'" *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) *quoting Teleflex, Inc. v. Ficosa North America Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002). "The general rule, of course, is that the claims of a patent are not limited to the preferred embodiment, unless by their own language." *Elkay Manufacturing Co. v. Ebco Manufacturing, Co.*, 192 F.3d 973, 978 (Fed. Cir. 1999), *quoting from Karlin Tech., Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 973 (Fed. Cir. 1999). Importantly, a claim construction that would not cover a preferred embodiment in the specification "is rarely, if ever, correct and would require highly persuasive evidentiary support." *Vitronics*, 90 F.3d 1583.

### c) Prosecution History

Finally, the prosecution history may be instructive in construing claims. *See Markman*, 52 F.3d at 980 (a court "should also consider the patent's prosecution history, if it is in evidence"). The role of the prosecution history can be helpful in "demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of

prosecution, making the claim scope narrower than it would otherwise be." *Phillips,* 415 F.3d at 1317. Although *Phillips* and *Markman* hold that prosecution history is "intrinsic evidence," Gear 2000 believes the Court does not have to resort to the prosecution history of the '104 Patent.

### 3.    Extrinsic Evidence

Any evidence outside the patent claims, the patent specification and the prosecution history, whether reference materials, testimony or prior art not cited in the prosecution history, constitutes extrinsic evidence. *See Zodiac Pool Care, Inc. v. Hoffinger Indus., Inc.,* 206 F.3d 1408, 1414 (Fed. Cir. 2000). A court should not look to extrinsic evidence if examination of the intrinsic evidence makes the claim meaning clear and unambiguous. *See Vitronics,* 90 F.3d at 1583. The *Phillips* court emphasized that such evidence is "less significant than the intrinsic record," is "less reliable" and is "unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Phillips,* 415 F.3d at 1317-19.

Such evidence, including dictionaries and treatises, is not part of the patent and may not be written by or for skilled artisans. *Id.* at 1318. Likewise, given the "virtually unbounded universe of potential extrinsic evidence," there exists the danger that parties will choose pieces of such evidence to favor their interpretation. *Id.* Finally, extrinsic evidence presents a serious danger that "it will be used to change the meaning of claims in derogation of the indisputable public records consisting of the claims, the specification and the prosecution history, thereby undermining the public notice function of patents." *Id.* at 1319. (citing *Southwall Techs., Inc. v. Cardinal IG Co.,* 54 F.3d 1570, 1578 (Fed. Cir. 1995)).

"[E]xtrinsic evidence may not be used to contradict the meaning of the claim or arrive at a construction that is at odds with the language of the claims." *Barreca v. South Beach Beverage*

*Co.*, 322 F.Supp.2d 1186, 1199 (D. Colo. 2004), *aff'd*, 141 F. App'x 912 (Fed. Cir. 2005).  When a court does consider sources other than the intrinsic evidence, it is limited to circumstances where "those sources are not used to contradict claim meaning that is unambiguous in light of the intrinsic evidence."  *Phillips,* 415 F.3d at 1324.   Indeed, "a claim interpretation that would exclude the inventor's device is rarely the correct interpretation; such an interpretation requires highly persuasive evidentiary support, whereas in the case it received none." *Modine Mfg. Co. v. International Trade Commission*, 75 F.3d 1545, 1550 (Fed. Cir. 1996).  Nor is claim construction a policy-driven inquiry.  It is a contextual interpretation of language.  The scope of patent claims can neither be broadened nor narrowed based on abstract policy considerations regarding the effect of a particular claim meaning.  *See Quantum Corp. v. Rodime, PLC*, 65 F.3d 1577, 1584 (Fed. Cir. 1995) ("[I]t is well settled that no matter how great the temptations of fairness or policy making, courts do not redraft claims").  For this reason, the Federal Circuit has repeatedly stated that a court must construe claims without considering the implications of covering a particular product or process.

### 4.   **Means Plus Function Construction**

The claims of the '104 Patent contain "means plus function" clauses.  Means plus function clauses in a patent claim operate in a different manner than other language in the body of a claim.  The manner in which means plus function clauses operate is defined by statute.  Paragraph six of 35 U.S.C. § 112 reads as follows:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112, ¶ 6.

Within a means plus function clause, language is construed using normal rules for determining the definitions of words and phrases. The court must, however, identify the claimed function and determine the corresponding structure disclosed in the specification. *See IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1430 (Fed. Cir. 2000). "The first step in construing such a limitation is to identify the function of the means-plus-function limitation." *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1208 (Fed. Cir. 2002). "The next step is to identify the corresponding structure in the written description necessary to perform that function." *Id.* "'Structure disclosed in the specification is "corresponding" structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim.'" *Id.* (*quoting B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997)). Finally, "such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. § 112, ¶ 6.

## B.    RUSSELL'S PROPOSED CONSTRUCTION OF THE 104 PATENT

On July 2, 2009, the parties exchanged proposed claim constructions. Gear 2000 contends no claim terms require construction because the language of the Claims is clear and unambiguous. However, based upon Defendant's submission, Defendant argues the following nine terms require construction:

| Disputed Claim Terms and Phrases |
|---|
| Breathable torso pad member (Claim 11) |
| Breathable foam (Claim 11) |
| Airflow through (Claim 11) |
| Substantially throughout its area (Claim 11) |
| Allow airflow through said torso pad member substantially throughout its area (Claim 11) |
| Means for releasably securing (Claim 12) |

| Disputed Claim Terms and Phrases |
| --- |
| Means for securing (Claim 13) |
| Means for accessorizing (Claim 15) |
| Means for accessorizing (Claim 16) |

(Collectively, the "Claim Terms")

Without limiting its Reply to Russell's Claim Construction Brief, due before this Court on August 3, 2009, Gear 2000 submits the following limited response to Russell's proposed constructions.

| Claim Term | Defendant's Proposed Construction |
| --- | --- |
| Breathable torso pad member | "A torso pad that allows air or moisture to flow through the pad throughout its whole area" |

Defendant's proposed construction attempts to insert additional limitations and ambiguities that are unsupported by the claim language and the intrinsic evidence. Neither the claims themselves nor the specification expressly limit this language as Defendant has proposed.

Furthermore, Defendant's insertion of the phrase "flow through the pad throughout its whole area" shows that Defendant has not provided a genuine construction of the claim phrase, but instead introduces ambiguity, limitations and internal inconsistencies with its construction of the phrase "substantially throughout its area", not supported in the claim language or the specification.

Defendant's proposed construction contradicts (i) the clear language of the Claims and (ii) its own construction of "substantially throughout its area" because it inserts the unsupported requirement that "breathability" must occur throughout the entire "pad" and not, as the Claim clearly provides, just the "torso pad member."

According to the clear and unambiguous language of the Claims, the terms "pad" and

"torso pad member" possess separate and distinct meanings. The Claims define "[t]orso pad member" narrowly and "pad" more broadly. The term "torso pad member" includes only the chest portion, back portion and shoulder portion of the "pad." (*See* Claim 11, 6:62-65).

The term "pad", however, includes (i) both a left and right chest portion, back portion and shoulder portion (i.e., the "torso pad member"), (ii) left and right deltoid pads, (iii) left and right shoulder cap pads and (iv) a rigid plastic outer arch that extends partially over the exterior of each torso half (*See* Claim 1, 5:62-67, Claim 4, 6:32-35 and Claim 5, 6:36-41).

According to basic rules of grammar (i.e., a common noun modifies the proper noun directly preceding it), Defendant's use of the word "its" modifies the broader term "pad." Hence a construction that requires air to flow through the "whole area" of the "pad." The clear language of the Claims (and Defendant's own proposed constructions) cannot support this proposed construction.

The "breathable torso pad member" of Claim 11 requires only that the two torso halves of the torso pad member (i.e., the chest portion, back portion and shoulder portion) be breathable and not, as Defendant's construction proposes, the "whole area" of the "pad" (i.e., the chest portion, back portion and shoulder portion of each torso half *and* left and right deltoid pads and left and right shoulder cap pads and the rigid plastic outer arch extending partially over the exterior of each torso half). By example, Claim 11 clearly sets forth the concept that only the "torso pad member" be "breathable." "[S]aid hard inner layer having spaced apart openings therethrough to allow airflow through said torso pad member substantially throughout its area." (*See* Claim 11, 7:4-6) Defendant's construction is illogical and finds no support in the claim language or specification.

Further, Defendant's proposed construction is internally inconsistent with its proposed

construction of the term "substantially throughout **its** area." (emphasis added). For example, concerning the breathability and airflow of the '104 Patent, Defendant expressly defines the term "its" as the "torso pad member" and not the "pad" (*See* Exhibit B, p. 2). However, Defendant's proposed construction for "breathable torso pad member" incongruously constructs a requirement that breathability occur throughout the "whole area" of the "pad." This proposed construction cannot be reconciled with Defendant's own proposed construction, and the plain and clear language of the Claims.

Further, the word "whole" (particularly when it modifies the word "pad") finds no support in the claim language. (*See* Gear 2000's discussion concerning "substantially" at pp. 16-17.)

Gear 2000 asserts "breathable torso pad member" requires no construction because the language of the '104 Patent is clear and plain. This Claim Term should have its ordinary and customary meaning.

| Claim Term | Defendant's Proposed Construction |
|---|---|
| breathable foam | "A padding material that allows the flow of air or moisture through the padding itself and not merely through the hole or cutout in the padding. Breathable foam does not include a closed cell type foam." |

Defendant's proposed construction of "breathable foam" introduces additional ambiguities (e.g., "not merely the hole or cutout in the padding"), limitations ("[b]reathable foam does not include a closed cell type foam.") and embraces a claim construction that expressly ignores a preferred embodiment in the specification. Defendant's proposed construction is unsupported by the claim language and in contravention to the plain and ordinary language of the Claims and specification.

For example, Defendant's proposed construction that a "breathable foam does not include a closed cell type foam" would render the term "breathable foam" virtually meaningless in light of dependent claims 7, 8, 17 and 18.  While not entirely clear from its language, Defendant's construction would require that the padding material (i.e., the foam itself) allow for the flow of air or moisture through itself and does not include closed cell foam.  However, Claim 7 expressly states that the "breathable foam [is] formed of **closed cell foam** beads fused together."  6:46-48 (emphasis added).  Air and moisture do not flow **through** the foam, instead, air and moisture flow around each bead of foam.

The specification identifies two preferred embodiments of "breathable foam" in Figures 12 and 13: (1) "**closed cell foam**" beads fused together (e.g., Brock foam) (FIG. 12); and (2) conventional "**closed cell foams**" containing multiple puncture holes throughout (FIG. 13).  Yet, Defendant's imprecise construction unnecessarily limits "breathable foam" to exclude both of the specification's preferred embodiments.  Counsel assumes, for the sake of argument, that when Defendant's counsel avers that "breathable foam does not include a **closed cell foam type**" it refers to the type of foam embodied in Figure 13, **44** and **46** and is not referring to the "closed cell foam beads" embodied in Figure 12, **44** and **46**.  Yet it is just this type of unnecessary ambiguity that the law seeks to avoid when the claims and specification language make clear the metes and bounds of an invention.

In describing the shoulder pad's breathable foam component, the specification states that "[t]he foam body **40** includes a hard inner layer **42** and first and second layers **44** and **46** of breathable foam."  3:10-11.  Figure 12 describes the "breathable foam" as "formed of closed cell foam beads **52** fused together where the individual beads **52** meet.  One such foam is Brock foam . . ."  3:35-38.  Figure 13 then presents an alternative to the "closed cell foam beads fused

together."  Regarding this alternative, the specification expressly provides as follows:

> Alternatively, as shown in FIG. 13, the **first and second foam layers 44 and 46 can be conventional** open or **closed cell foams**, each layer being punctured with multiple holes **58** therethrough.  **One layer 44** or **46** could be open cell foam and the other layer **44** or **46** can be closed cell foam to maximize impact resistance to the athlete.  The puncture holes **58** are smaller in diameter than the hard layer openings **50**.  Preferably, several puncture holes **58** align with an opening **50** to allow air and moisture to pass through the foam body.

3:47-56 (emphasis added).   The specification expressly contemplates two embodiments for "breathable foam."  Defendant's proposed construction fails to contemplate either one, let alone both.  "Breathable foam" should be given its plain and ordinary meaning, in light of the Claims and specification.

| Claim Term | Defendant's Proposed Construction |
|---|---|
| Airflow through | "Circulation of air or moisture, sufficient to effectively ventilate body heat or perspiration from the wearer, through one side of the torso pad, passing into one surface and out of the opposing surface of the padding material of the first and second foam layers, then passing out of the other side of the torso pad." |

Defendant's proposed construction injects words, phrases and terms that unnecessarily seek to alter the plain and ordinary meaning of these two words and so wholly deviates from the plain and ordinary meaning of the claim language as to be virtually nonsensical.  The words (and any reasonable equivalents thereof) "circulation", "body heat", "perspiration", "essentially" and "everywhere" do not exist in this patent.

By example only, Defendant's construction requires that an essential component of "airflow through" is that the air or moisture "circulat[e]" "sufficient to effectively ventilate body heat or perspiration from the wearer."  This limitation exists nowhere in the Claims or specification and invites unnecessary ambiguity.  Further, Defendant's construction introduces

unnecessary ambiguity into the Claims through the introduction of the seemingly immeasurable standard of "sufficient to **effectively ventilate**." (emphasis added).

The word "circulation" is referenced once in the specification and specifically describes one embodiment of the type of foam that makes up the foam body **40**. (*See* 3:35-41). The specification uses the word "circulation" to describe how air moves "in three dimensions" throughout the Brock foam and not, the entire torso pad, as Defendant's proposed construction would command. Further, Webster's New World Dictionary of the American Language (Second College Edition), first defines the term "circulation" as "free movement around from place to place, as of the air in ventilation" and secondarily as "the act of moving around in a complete circuit." (Exhibit D). The plan and simple language of the Claims do not embrace the concept of "moving around in a complete circuit."

Furthermore, the Claims do not teach the limitations of a "heat" and "perspiration" "moving in a" "continuous" "circle" as Defendant's proposed construction suggests.

Furthermore, the concept that heat and perspiration "ventilate from" the wearer demands a construction that implies the active wicking or pulling of sweat and heat from the wearer's body. This is not consistent with the passive phrasing of "allow airflow through" found in the Claims.

Gear 2000 submits that the clear and unambiguous language of the intrinsic evidence command that "airflow through" be given its plain and ordinary meaning.

| Claim Term | Defendant's Proposed Construction |
|---|---|
| Substantially throughout its area | "Essentially everywhere in the torso pad" |

Defendant's proposed construction of this phrase defies the clear language of the Claims and the specification (and, coincidentally, Defendant's proposed construction for "[b]reathable

torso pad member.")  (*See* discussion at pp. 10-12)  "Essentially everywhere" renders meaningless the claim language "hard inner layer having spaced apart openings therethrough." (Claim 11, 7:4-5).  "Substantially throughout its area" refers to the area of the "torso pad" (*see infra* at p. 11), which includes only the chest portion, back portion and shoulder portion of the shoulder pad.  The torso pad is, in part, comprised of a hard inner layer.  (Claim 11, 6:66-7:3). While this hard inner layer contains "spaced apart openings", a construction of "essentially everywhere in the torso pad" does not account for a hard inner layer that contains a significant amount of non-breathable surface area (particularly in the shoulder portion).  Defendant's proposed construction that it be "essentially everywhere" conflicts with the clear and unambiguous language of the Claims and specification.  (*See* FIG. 11).

Further, the "foam layers" that are adhered to either side of the hard inner layer do not contemplate airflow "essentially everywhere" through each foam layer, either.  By example only, FIG. 13, identifies that the first and second foam layers **44** and **46** can be conventional closed cell foam punctured with multiple holes **58** therethrough.  (*See* 3:470-52).  Again, Defendant's proposed construction of "essentially everywhere" cannot be reconciled with a closed cell foam with holes punctured therethrough because a significant portion of the surface area of the closed cell foam remains non-porous.

When each of the above analyses are considered together, Defendant's proposed construction becomes even less tenable.

Assuming, without conceding, that a construction of this phrase were required, a more reasonable construction for "substantially throughout its area" is "sufficiently throughout the torso pad member."  In the context of the Claims, the term "substantially" is used to describe degree or magnitude. The hard inner layer and closed cell foam described in the specification

and Claims sets forth sufficient boundaries for determining the meaning of "substantially throughout its area." Defendant's construction ignores the clear and unambiguous description, and structure, of the '104 Patent as discussed above. "[S]ubstantially throughout its area" should be given its plain and ordinary meaning, in light of the Claims and specification.

| Claim Term | Defendant's Proposed Construction |
|---|---|
| Allow airflow through said torso pad member substantially throughout its area | "Circulation of air or moisture, sufficient to effectively ventilate body heat or perspiration from the wearer, through one side of the torso pad, passing into one surface and out of the opposing surface of the padding material of the first and second foam layers, then passing out of the other side of the torso pad." |

Gear 2000 incorporates its analysis above on pages 14-16 in response to Defendant's proposed construction immediately set forth above because Defendant's proposed construction is a synthesis of two previously identified proposed constructions.

With regard to Defendant's remaining proposed constructions of the means plus function phrases identified in its Proposed Constructions, Gear 2000 asserts that no construction is necessary and that each must be construed to cover each corresponding structure, material, or act described in the specification and each equivalent thereof.

## C.    UNCONTESTED CLAIMS AND/OR ELEMENTS

All Claims and Claim terms not disputed by Defendant should be construed according to the plain and ordinary meaning of the terms in such Claims.

## CONCLUSION

The plain and ordinary meaning of the Claims and Claim Terms sufficiently describe the metes and bounds of the '104 Patent without any additional construction or reference to any extrinsic evidence. Defendant's proposed constructions inject ambiguity, are unnecessarily

narrowing, internal inconsistent and ignore the plain and simple language of the '104 Patent.  For the reasons stated above, Gear 2000 respectfully requests that the Court construe the Claims and Claim Terms to have their plain and ordinary meaning.

Respectfully submitted this 20th day of July, 2009.

By _s/_

John P. Passarelli, NE #16018
Stephen J. Pedersen, NE #22465
Kutak Rock LLP
1650 Farnam Street
Omaha, NE 68102
Telephone:  (402) 346-6000
Facsimile:  (402) 346-1148
Email:  john.passarelli@kutakrock.com
Email:  stephen.pedersen@kutakrock.com


Ginnie C. Derusseau #16,988
James J. Kernell, #19,559
Erickson, Kernell, Derusseau
& Kleypas, LLC
800 West 47th Street, Suite 401
Kansas City, Missouri 64112
Telephone:  (816) 753-6777
Facsimile:  (816) 753-6888
Email:  jkernell@kcpatentlaw.com
Email:  ginnied@kcpatentlaw.com


ATTORNEYS FOR PLAINTIFF ED TOBERGTE ASSOCIATES COMPANY

**CERTIFICATE OF SERVICE**

I hereby certify that on July 20, 2009, I served via email and US mail the

foregoing **PLAINTIFF'S CLAIM CONSTRUCTION** to the following:


Russell S. Jones, Jr. KS #70814
Richard P. Stitt KS #14268
POLSINELLI SHUGHART PC
120 W 12th Street, Suite 1600
Kansas City, MO 64105
Telephone: 816-421-3355
Facsimile: 816-374-0509
Email: rjones@polsinelli.com
Email: rstitt@polsinelli.com

and

Paul M. Sykes
Joel M. Kuehnert
Nathan W. Johnson
Edward J. Everitt
Bradley Arant Boult Cummings LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL  35203
Telephone:  205-521-8000
Facsimile:  205-521-8800
Email: psykes@ba-boult.com
Email: jkuehnert@ba-boult.com
Email: njohnson@ba-boult.com
Email: eeveritt@ba-boult.com

s/
Stephen J. Pedersen