IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ED TOBERGTE ASSOCIATES
COMPANY d/b/a GEAR 2000,
an Ohio corporation,

                    Plaintiff,                                    Civil Action

v.                                                               Case No. 08-2290-JWL-GLR

RUSSELL BRANDS, LLC,
a Delaware limited liability company,

                    Defendant.

## MEMORANDUM AND ORDER

Plaintiff Ed Tobergte Associates d/b/a Gear 2000 brings this action for patent infringement and false advertising under the Lanham Act.  Plaintiff alleges that football shoulder pads sold by Defendant Russell Brands, LLC, through its division Bike Athletics, infringed upon its patent.  This matter comes before the Court upon two motions: (1) the Motion to Quash (doc. 43), filed by Plaintiff's counsel, Ginnie Derusseau; and (2) Motion to Compel Production of Documents (doc. 49), filed by Defendant.  Counsel for Plaintiff requests in her motion that the Court , pursuant to Fed. R. Civ. P. 45(c)(3), quash the subpoenas served upon her on April 2, 2009, and enter an order to prohibit Defendant from deposing her.  Defendant has filed, pursuant to Fed. R. Civ. P. 37(a), its motion to compel Ms. Derusseau to produce documents in compliance with the subpoena to produce documents.

## I.    Background Facts

Plaintiff designs, manufactures, markets, and sells football shoulder pads, among other products.  On January 30, 2007, the United States Patent and Trademark Office ("USPTO") issued U.S. Patent No. 7,168,104 (" '104 Patent") entitled "Football Shoulder Pads" to Edward H.

Tobergte.  All right, title and interest in and to the '104 Patent has been assigned to Plaintiff, who is the sole owner of the '104 Patent.  Ginnie Derusseau is counsel of record for Plaintiff in the present litigation.  She also acted as patent counsel for Plaintiff with regard to the preparation and prosecution of the '104 Patent.  She also prosecuted another patent application on football pads for inventor Ed Tobergte under U.S. patent application number 11/059,769 ("Parallel Application").

In the present action Plaintiff alleges that football shoulder pads sold by Defendant infringe upon its '104 Patent.  Defendant has raised as one of its defenses that the '104 Patent is unenforceable, due to inequitable conduct before the USPTO.  Defendant alleges specifically that Ms. Derusseau, as the attorney who prepared and prosecuted the patent, engaged in inequitable conduct by knowingly failing to disclose certain prior art references to the USPTO during prosecution of the '104 Patent.

On April 2, 2009, Defendant served two subpoenas on Ms. Derusseau.  The Subpoena to Produce Documents commanded her to produce documents responsive to eleven requests for production.  The Subpoena to Testify at a Deposition set her deposition for April 28, 2009.  Defendant had previously served sets of subpoenas on Ms. Derusseau on March 6, March 10, and March 25, but each time Ms. Derusseau objected on grounds of deficiency of service.  On April 13, 2009, Ms. Derusseau filed the instant Motion to Quash.  She served her objections to the subpoena on Defendant on April 15, 2009.[1]  Defendant thereafter filed its Motion to Compel Production of Documents sought in the subpoena on May 5, 2009.

---

[1] *See* Objections to Subpoena (doc. 45).

-2-

## II.    Motion to Quash Subpoena Served on Plaintiff's Counsel

As counsel for Plaintiff, Ms. Derusseau moves, pursuant to Fed. R. Civ. P. 45(c)(3) and D. Kan. Rules 37.1 and 37.2, to quash the subpoena served upon her to testify at deposition. She argues that Defendant has failed to meet the prerequisite conditions for such deposition. She contends this Court has required that the party seeking the deposition of an opposing attorney of record to show that no other means exist to obtain the information, except to depose counsel, the information sought is relevant and non-privileged, and that the information is crucial to the preparation of the case. Defendant argues that the motion to quash should be denied because the initial disclosures of Plaintiff identified Ms. Derusseau as a fact witness with discoverable knowledge, that her testimony is highly relevant to the defense of inequitable conduct, and that she has failed to show good cause why her deposition should not proceed. Defendant also asserts that, if the Court considers *Shelton* criteria in deciding the motion to quash, each of the three criteria have been satisfied.

### A.    Applicable Legal Standard for Ruling on a Motion to Quash Subpoena

Federal Rule of Civil Procedure 45(c)(3) provides that a court shall quash or modify a subpoena if it requires disclosure of privileged information or subjects a person to undue burden.[2] A district court may also limit the frequency or extent of discovery otherwise allowed if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; [or] the party seeking discovery has had ample opportunity to obtain the information by discovery in the action[ ]."[3]

---

[2]Fed. R. Civ. P. 45(c)(3)(A).

[3]Fed. R. Civ. P. 26(b)(2)(C)(i)-(ii).

The law of the regional circuit, not the Federal Circuit, applies to procedural issues that are not unique to patent law.[4]  The Federal Circuit has held that a motion to quash a subpoena generally does not involve issues unique to patent law, and therefore regional law governs such motions.[5]  The Court will therefore apply the law of the Tenth Circuit in deciding the motion to quash and corresponding motion to compel production of documents.

### B.    Depositions of Opposing Counsel

The Federal Rules of Civil Procedure do not prohibit the deposition of an attorney for a party.[6]  This Court, however, has recognized the potential for abuse in deposing an opponent's attorney by inviting "delay, disruption of the case, harassment, and unnecessary distractions into collateral matters."[7]  In *Shelton v. American Motors Corp.*, the Eighth Circuit Court of Appeals indicated its view that the increasing practice of taking the deposition of opposing counsel was a negative development, and one that should be employed only in *limited* circumstances.[8]  While expressly stating that it was not holding that trial counsel should be absolutely immune from being deposed, the *Shelto*n court set forth the limited circumstances where the court should permit the

---

[4]*Lamle v. Mattel, Inc.*, 394 F.3d 1355, 1358 (Fed. Cir. 2005). *See also Genal Strap, Inc. v. Dar*, No. CV2004-1691(SJ)(MDG), 2006 WL 525794 at *1 n.1 (E.D.N.Y. Mar. 3, 2006); *aaiPharma, Inc. v. Kremers Urban Dev. Co.*, 361 F. Supp. 2d 770, 773 n.1 (N.D. Ill. 2005).

[5]*Trustwal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1209 (Fed. Cir. 1987).

[6]*See* Fed. R. Civ. P. 30(a)(1) ("A party may, by oral questions, depose *any* person . . . .") (emphasis added).

[7]*Hay & Forage Indus. v. Ford New Holland, Inc.*, 132 F.R.D. 687, 689 (D. Kan. 1990).  *See also Mike v. Dymon, Inc.*, 169 F.R.D. 376, 378 (D. Kan. 1996).

[8]*Shelton v. Am. Motors Corp.,* 805 F.2d, 1323, 1327 (8th Cir. 1986) (emphasis added).

deposition of opposing trial counsel.[9]  Specifically, those circumstances should be limited to where the party seeking to take the deposition has shown that: "(1) no other means exist to obtain the information except to depose opposing counsel; (2)  the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case."[10]  The *Shelton* court set forth the following rationale for its decision to restrict the circumstances under which opposing counsel may be deposed:

> Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation. It is not hard to imagine additional pretrial delays to resolve work-product and attorney-client objections, as well as delays to resolve collateral issues raised by the attorney's testimony. Finally, the practice of deposing opposing counsel detracts from the quality of client representation. Counsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent. Moreover, the "chilling effect" that such practice will have on the truthful communications from the client to the attorney is obvious.[11]

In *Boughton v. Cotter Corp.*,[12] the Tenth Circuit addressed the issue of whether the district court erred in issuing a protective order prohibiting the plaintiffs from taking the deposition of outside counsel representing defendants.   In the decision, the Tenth Circuit stated that it approved of the criteria set forth in *Shelton*.[13]  It, however, limited its holding, stating that "ordinarily the trial court at least has the discretion under Rule 26(c) to issue a protective order against the deposition of opposing counsel when any one or more of the three *Shelton* criteria for deposition . . . are not

---

[9]*Id.*

[10]*Id.*

[11]*Shelton*, 805 F.2d at 1327.

[12]65 F.3d 823, 830 (10th Cir. 1995).

[13]*Boughton v. Cotter Corp.*, 65 F.3d 823, 830 (10th Cir. 1995).

met."[14]  Since *Boughton* was decided, the Tenth Circuit in *Thiessen v. General Electric Capital Corp.,*[15] has indicated that the *Shelton* criteria were adopted in *Boughton*.[16]  Both before and after *Boughton* was decided, courts in this District have almost universally applied the *Shelton* criteria in deciding whether to allow the deposition of opposing trial counsel.[17]  The party seeking to take

---

[14]*Id.*

[15]267 F.3d 1095, 1112 n. 15 (10th Cir. 2001).

[16]*See id.* ("*Shelton* was adopted by this court in *Boughton*.").

[17]*See Continental Coal, Inc. v. Cunningham*, No. 06-2122-KHV, 2008 WL 145245, at *2 (D. Kan. Jan. 14, 2008) (applying *Shelton* criteria to motion for protective order to prohibit depositions of plaintiff's counsel);  *Harris v. Euronet Worldwide, Inc.*, No. 06-2537-JTM-DWB, 2007 WL 1557415, at *2-3 (D. Kan. May 29, 2007) (applying *Shelton* criteria to motion for protective order to prevent defendants from deposing plaintiff's counsel); *Raytheon Aircraft Co. v. U.S.,* Civ. A. No. 05-2328-JWL-DJW, 2007 WL 1115198, at *2 (D. Kan. Apr. 13, 2007) (applying *Shelton* criteria to a motion to quash deposition of defendant's counsel); *Horizon Holdings, LLC v. Genmar Holdings, Inc.*, No. 01-2193-JWL, 2002 WL 1822404 at *2-4 (D. Kan. June 13, 2002) (applying *Shelton* criteria to prevent deposition of defendant's counsel); *Worthington v. Wal-mart Stores, Inc.*, No. 01-2106-JWL, 2002 WL 1203753, at *1 (D. Kan. May 17, 2002) (applying *Shelton* criteria to motion to quash deposition of in-house counsel for defendant);  *Epling v. UCB Films, Inc.*, 204 F.R.D. 691, 693 (D. Kan. 2001) (applying *Shelton* criteria to motion for protective order to prevent deposition of in-house counsel for defendant);  *Simmons Foods, Inc. v. Willis*, 191 F.R.D. 625, 630 (D. Kan. 2000) (applying *Shelton* criteria to motion to quash subpoena commanding plaintiff's counsel to appear for deposition);  *Kelling v. Bridgestone*, 153 F.R.D. 170, 171 (D. Kan. 1994) (applying *Shelton* criteria to motion to compel deposition of plaintiff's counsel).  *But see McGuire v. Am. Family Mut. Ins. Co.*, No. 08-1072-JTM, 2009 WL 1044945 at *2-3 (D. Kan. Apr. 20, 2009) (declining to apply *Shelton* criteria to defendant's motion for protective order prohibit deposition of its in-house counsel); *Paradigm Alliance, Inc. v. Celeritas Techs., LLC*, No. 07-1121-EFM, 2008 WL 4891241 at *5 (D. Kan. Nov. 12, 2008) (declining to apply *Shelton* criteria to plaintiff's motion for protective order because both parties agreed to deposition of plaintiff's counsel); *Tilley v. Equifax Info. Servs., LLC*, No. 06-2304-JAR, 2007 WL 3120447 at *1 (D. Kan. Oct. 24, 2007) (declining to apply *Shelton* criteria where only scope of deposition at issue); *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 164 F.R.D. 245, 246-47 (D. Kan. 1995) (declining to apply *Shelton* criteria to motion to limit deposition of defendant's counsel where parties agreed to the deposition).

the deposition of opposing counsel bears the burden of establishing that the three criteria are satisfied.[18]

Given this precedent, the Court will consider the *Shelton* criteria in reviewing the motion to quash the deposition of Ms. Derusseau.

### C.    Whether Defendant Has Met the *Shelton* Criteria for Deposing Opposing Counsel

#### 1.    Other means exist to obtain the information

Defendant must first demonstrate that no other means exist to obtain the information, except to depose Ms. Derusseau.  It must show that the information it seeks through her deposition is not available from any other source,[19] and is the "only reasonably practical means available for obtaining the information."[20]   In patent infringement cases where inequitable conduct has been raised as a defense, this factor is almost always met because the mental impressions and knowledge of the attorney who prosecuted the patent application cannot otherwise be obtained from other discovery sources.[21]   If there are other available sources of information, Defendant should explore those

---

[18]*See Boughton*, 65 F.3d at 830 n. 10 ("The burden is on the [party seeking the deposition of opposing counsel] to establish that the *Shelton* criteria are met."); *Continental Coal*, 2008 WL 145245, at *2 (burden on party seeking the deposition to establish criteria met); *Harris*, 2007 WL 1557415, at *2 (*Shelton* test requires the party seeking the deposition of opposing counsel to show three factors); *Worthington*, 2002 WL 1203753, at *1 (burden on party seeking the attorney's deposition); *Mike*, 169 F.R.D. at 378 (same).  *But see United Phosphorus,* 164 F.R.D. at 247 (burden on party seeking to limit scope of deposition).

[19]*Worthington*, 2002 WL 1203753, at *1.

[20]*Mike*, 169 F.R.D. at 379.

[21]*See Hay & Forage Indus.,* 132 F.R.D. at 690 (denying the motion to quash deposition of attorney who prosecuted the plaintiff's patent application as he was best and perhaps only available source for first-hand knowledge and information relevant to defense of inequitable conduct); *Dri Mark Prods., Inc. v. Wilpak Indus., Inc.,* No. 04-CV-696 (JBW), 2006 WL 2882565, at *8
(continued...)

sources first.[22]   Some other methods to be explored are written interrogatories, requests for production, or requests for admission,[23] as these discovery methods "do not involve the same dangers as an oral deposition of opposing counsel."[24] The proponent of the deposition must identify the specific unsuccessful measures it has taken to obtain the information, why they have failed, and that other resources are unavailable.[25]

Defendant argues that it is entitled to take the deposition of Ms. Derusseau because Plaintiff identified her in its Rule 26(a) initial disclosures as a person "knowledgeable concerning the '104 Patent, and the enforcement of the '104 Patent." Because Plaintiff has thus identified her as a person likely to have discoverable information, Defendant asserts that it is entitled to depose her to discover "all nonprivileged information relevant to any claim or defense related to the '104 Patent (which necessarily includes its preparation and prosecution) and its enforcement."[26] Defendant states that it primarily seeks information related to its defense of inequitable conduct.  It alleges that Ms. Derusseau engaged in inequitable conduct by knowingly failing to disclose certain prior art references to the USPTO during prosecution of the '104 Patent.   Defendant contends that Ms. Derusseau is the only person with first-hand knowledge of her own actions and inactions during

---

[21](...continued)
(E.D.N.Y., Oct. 6, 2006) (finding that the deposition of plaintiff's counsel regarding his strategy and intent in filing patent application was only way to obtain information).

[22]*Hay & Forage Indus.*, 132 F.R.D. at 689; *Mike*, 169 F.R.D. at 379.

[23]*Hay & Forage Indus.*, 132 F.R.D. at 689.

[24]*Mike*, 169 F.R.D. at 379.

[25]*Id.*

[26]Def.'s Response in Opp. to Mot. to Quash (doc. 48) at p. 2.

prosecution of '104 Patent application and this information necessarily includes testimony regarding her state of mind.   As she is the only person with this knowledge, no other means exist to obtain the information.

A party asserting the defense of inequitable conduct that arises from a failure to disclose prior art must offer clear and convincing proof that the patent applicant failed to disclose material prior art and acted with intent to deceive the USPTO into granting the patent.[27]   In determining inequitable conduct, the knowledge and actions of a patent applicant's attorney are chargeable to the applicant.[28] Recognizing this, courts have permitted the deposition of patent prosecution counsel who is also serving as trial counsel where the knowledge of counsel was pertinent to a defense of inequitable conduct.[29]   Those courts have recognized that mental impressions of the attorney who

---

[27]*Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995).

[28]*Genal Strap, Inc. v. Dar*, No. CV2004-1691(SJ)(MDG), 2006 WL 525794 at *1 n.1 (E.D.N.Y. Mar. 3, 2006).  *See also Novo Nordisk Pharm., Inc. v. Bio-Technology Gen. Corp.*, 424 F.3d 1347, 1361-62 (Fed. Cir.  2005) (refusing to excuse counsel's failure to disclose the truth to USPTO based upon their claim they were not fully informed by the inventors); *Elk Corp. of Dallas v. GAF Bldg. Materials Corp.*, 168 F.3d 28, 30 (Fed. Cir. 1999) ("[a]pplicants for patents, including their patent attorneys, are required to prosecute patent applications in the PTO with candor, good faith, and honesty.");  *Molins PLC*, 48 F.3d at 1178 (duty of candor, good faith, and honesty to USPTO extends to patent applicant's representatives);  37 C.F.R. § 1.56 (2008) (duty to disclose material information extends to attorney who prepares or prosecutes application).

[29]*See Leviton Mfg. Co., Inc. v. Shanghai Meihao Elec., Inc.,* 613 F. Supp. 2d 670, 717-18 (D. Md. 2009) ("courts regularly permit the depositions of patent prosecution counsel, finding the information sought relevant and the inquiry proper when a party raises the defense of inequitable conduct");  *Genal Strap,* 2006 WL 525794, at *2 (allowing deposition of counsel because his role in the patent prosecution was crucial to inequitable conduct defense);  *Plymouth Indus.,* 2006 WL 695458, at *4 (finding deposition of plaintiff's counsel as crucial to inequitable conduct defense because of his role in the prosecution of the patents); *aaiPharma,* 361 F. Supp. 2d at 776 (allowing deposition of plaintiff's trial counsel who was substantially involved in preparation and prosecution of patent application as relevant to the affirmative defense of inequitable conduct); *Alcon Labs., Inc. v. Pharmacia Corp.,* 225 F. Supp. 2d 340, 344 (S.D. N.Y. 2002) (allowing deposition of lead trial (continued...)

prosecuted the patent are relevant, and sometimes crucial, to a claim of inequitable conduct in a patent infringement action.[30]

In this case, the Court finds that Defendant has established that deposing Ms. Derusseau is necessary to obtain information regarding her knowledge or awareness of prior art during prosecution of the '104 Patent, which is relevant to the defense of inequitable conduct. Defendant has also shown that Ms. Derusseau is the only person who can testify as to her knowledge and state of mind during prosecution of the '104 Patent.

Ms. Derusseau argues that the information sought by Defendant is available from other sources, such as the deposition of the inventor, Ed Tobergte. She asserts that he would be the best and most knowledgeable source of information. She notes that Defendant has not deposed Mr. Tobergte or a 30(b)(6) representative of Plaintiff. Mr. Tobergte may indeed be a knowledgeable source of information about the patent. But it does not necessarily follow that he would be the best and most knowledgeable source of information about the knowledge and state of mind of Ms.

---

[29](...continued)
counsel who prosecuted patent because his "mental impressions during the patent prosecution period are at issue . . . due to the inequitable conduct defense"); *Environ Prods. Inc. v. Total Containment Inc.*, Civ. A. No. 95-4467, 1996 WL 494132, at *4 (E.D. Pa. Aug. 22, 1996) (allowing deposition of plaintiff's trial counsel who handled the patent reexamination proceedings and where defendant asserted affirmative defense of inequitable conduct during the reexamination proceedings).

[30]*See V. Mane Fils, S.A. v. Int'' Flavors & Fragrances Inc.*, Civ. A. No. 06-2304(FLW), 2008 WL 3887621, *3 (D.N.J. 2008) ("multiple jurisdictions recognize that mental impressions of the prosecuting patent attorney are not only relevant, but possibly crucial, to an inequitable conduct defense in subsequent litigation over that patent."); *Alcon Labs.,* 225 F. Supp. 2d at 344 (finding prosecuting attorney's mental impressions during the patent prosecution period relevant to defendant's inequitable conduct defense and only discoverable directly from the attorney); *Environ Prods.*, 1996 WL 494132, at *4 ("The affirmative defense of inequitable conduct makes [trial counsel's] mental impressions during the reexamination proceedings an issue in this litigation"). *See also aaiPharma*, 361 F. Supp. 2d at 774 n. 3 (discovery from attorneys involved in prosecution of patents in suit is directly relevant to inequitable conduct).

Derusseau during prosecution of the '104 Patent. Ms. Derusseau obviously is the best and perhaps only person to adequately provide that information.

Plaintiff's Initial Disclosures[31] support this conclusion. The Disclosures describe the knowledge of Ed Tobergte: "Mr. Tobergte is knowledgeable about the management and operation of Gear 2000, Gear 2000's U.S. Patent No. 7,168,104 (the '104 Patent"), policies and procedures related to the enforcement of Gear 2000's '104 Patent and damages related to Defendants's infringement of the '104 Patent." By contrast, the Disclosures describe the knowledge of Ginnie D. Derusseau as follows: "Ms. Derusseau is patent counsel for Gear 2000 and is knowledgeable concerning the '104 Patent, and enforcement of the '104 Patent." The described knowledge of Mr. Tobertge does not refer to prosecution of the patent. But the designation of Ms. Derusseau as patent counsel fairly leads to an inference that she, and not Mr. Tobergte, has the most important, relevant knowledge attributable to Plaintiff about prior art when she prosecuted the patent on its behalf.

Ms. Derusseau also argues that Defendant has already requested the information relevant to its defense of inequitable conduct in its First Set of Interrogatories, and Plaintiff has answered and supplemented its answers to these interrogatories. Plaintiff states it has already identified all relevant and material prior art known by Ms. Derusseau prior to the registration of the '104 Patent. Defendant responds to this argument by asserting that it cannot serve interrogatories or requests for admission on Ms. Derusseau because she is a non-party. It further contends that the responses and supplemental responses to its discovery requests, seeking information relevant to the defense of inequitable conduct, are incomplete and inadequate. It points to Plaintiff's supplemental response to Interrogatory No. 21. Plaintiff therein states that the prior art shown on the face of the '104 Patent

---

[31]*See* Ex. A, attached to the Response in Opp. to Mot. to Quash (doc. 48).

was the only relevant, material prior art known to Ms. Derusseau at the time she was prosecuting the patent application.  It contends this is inconsistent with the Information Disclosure Statements from the Parallel Application, which allegedly show that Ms. Derusseau was aware of other prior art references related to football pads.

The Court finds that Defendant has sufficiently shown that it has exhausted all opportunities to obtain information pertinent to its defense of inequitable conduct through other forms of discovery.  From its response to Interrogatory No. 21, Plaintiff appears to disagree with what Defendant considers to be *relevant* prior art.  Due to this disagreement on what constitutes relevant prior art, the responses of Plaintiff to the discovery requests may not yield the information that Defendant seeks.  Less burdensome discovery methods like interrogatories and requests for admissions, moreover, are not available with regard to Ms. Derusseau as a non-party.[32]  She asserts that Plaintiff has already provided relevant documents in response to requests for production.  But the Court finds that assertion not directed to the real issue.  The instant subpoena does not seek documents from the custody, control or possession of Plaintiff.  It instead seeks documents from the separate file of the attorney who in fact prosecuted the patent.  Those documents may indeed duplicate those produced by Plaintiff, but not necessarily.  The documents in the file of the attorney would disclose her specific knowledge, if any, of prior art.

---

[32]*Genal Strap*, 2006 WL 525794, at *2 (patent prosecution counsel not subject to interrogatories under Federal Rules because he is not a party to the action); *Alcon Labs.*, 225 F. Supp. 2d at 344 (same).  *See also* Fed. R. Civ. P. 33.

This Court has previously considered a motion to quash a subpoena served on counsel in a patent infringement case in which inequitable conduct was raised as a defense.[33]  In *Hay & Forage Industries v. Ford New Holland*[34] the plaintiff sought to quash the deposition of the attorney who prosecuted the patent examinations and re-examinations of the patent before the patent office.  The court found that the defendant had shown sufficient need for the deposition, in that the attorney appeared to be the "best and perhaps only available source for much of the information sought."[35] The court rejected arguments similar to those advanced by counsel for Plaintiff in this case, i.e., that the inventor of the patented device would be the best and most knowledgeable source of information, and that the party seeking the deposition failed to exhaust all opportunities to obtain the information through other forms of discovery.[36]  The court found that the allegation of inequitable conduct concerned the alleged representation made by the attorney to the patent office, and thus the plaintiff had not shown that the inventor would be a better source than the attorney, who had first-hand knowledge about the alleged inequitable conduct.[37]  The court further found it unnecessary for the defendant to have exhausted all other forms of discovery, given the nature of the specific information sought.[38]

---

[33]*Hay & Forage Indus.*, 132 F.R.D. at 690-91.

[34]*Id.*

[35]*Id.* at 690.

[36]*Id.*

[37]*Id.*

[38]*Id.*

Given the numerous cases that permit the deposition of patent prosecution counsel where the defense of inequitable conduct has been raised, the Court finds that Defendant has established that the deposition of Ms. DeRusseau is the only reasonably practical means available for obtaining the information relevant to that defense.  Defendant has thus satisfied the first criterion for permitting the deposition of opposing counsel, i.e., that no other means exist to obtain the information, except to depose Ms. Derusseau.

### 2.    The information sought is relevant and non-privileged

Second, Defendant must show that the information sought is relevant and nonprivileged.[39] Defendant asserts that its purpose in deposing Ms. Derusseau is to inquire regarding knowledge of her actions and inactions during the prosecution of the application for the '104 Patent.  It argues that the decision she made in failing to disclose material prior art to the Patent Office during prosecution of the application for the '104 Patent is directly relevant to its defense of inequitable conduct.  The Court agrees that Defendant has shown the information sought from Ms. Derusseau is relevant to that defense.

As to whether the information sought is non-privileged, Defendant states it does not seek information properly protected by the attorney-client privilege or as work product.  It argues that communications of technical information between a client and attorney for purpose of submission to the USPTO, however, are not privileged.  It further argues that work performed by an attorney to prepare and prosecute a patent application is not work product, because it is not created in anticipation of litigation.

---

[39]*Simmons Foods*, 191 F.R.D. at 630.

-14-

In *Hay & Forage Industries v. Ford New Holland, Inc.*,[40] the court found the plaintiff's assertion of attorney-client privilege and work product premature and therefore insufficient to quash a subpoena served on patent counsel. It noted that it will ordinarily decline a motion to quash that is based upon the contention that the information sought is protected by the attorney-client privilege or work product doctrine.[41]  Instead, the deponent should appear for the deposition and raise any such objections to specific questions that elicit privileged information.[42]  This would permit deposing counsel to explore background facts concerning the privilege, and the deponent to substantiate any objections.[43]

The Court finds that Defendant has made a sufficient showing that some of the information sought may not be protected by the attorney-client privilege or as work product.  Conversely, Plaintiff has made no adequate showing that the principles set forth in *Hay & Forage Industries* should not apply here.  This is adequate to meet the second *Shelton* criterion.

Even though Defendant has sufficiently shown that not all the information sought from Ms. Derusseau is necessarily protected by the attorney-client privilege or as work product, the Court recognizes that some of the requested information may be privileged or protected.  At this point any ruling on any such questions would be premature.[44]  In these circumstances the parties should wait

---

[40]132 F.R.D. 687, 689 (D. Kan. 1990).

[41]*Id.*

[42]*Id.  See also V. Mane Fils,* 2008 WL 3887621, at *4 ("The more appropriate method is to allow the deposition to be taken and permit the attorney to claim privilege in face of certain questions, if necessary.").

[43]*Hay & Forage Indus.*, 132 F.R.D. at 689.

[44]*Alcon Labs.,* 225 F. Supp. 2d at 344 (quoting *In re Arthur Treacher's Franchisee Litig*., 92
(continued...)

until the privilege has been asserted and is ripe for decision.  The assertion that counsel has no

"non-privileged or non-protected information is not dispositive of the issue of whether he should be

subject to a deposition, since '[t]here is a basis . . . for the position that an attorney cannot avoid a

deposition by asserting that he or she has no relevant, nonprivileged information, and that, at a

minimum, the attorney must submit to a deposition so that his lack of knowledge may be tested and

any claimed privilege placed on the record.' "[45]  If defense counsel poses questions during the

deposition that would elicit privileged or protected information, Ms. Derusseau may then assert the

appropriate objection.  Defendant has satisfied the second criterion for deposing opposing counsel.

### 3.     The information is crucial to the preparation of Defendant's case

The third and final criterion calls for the Court to determine whether the deposition of Ms.

Derusseau is crucial to the preparation of Defendant's case.  Defendant asserts that factor is met.

The '104 Patent may be rendered unenforceable, if Defendant proves that Plaintiff procured it by

inequitable conduct.  It cites patent infringement cases in which courts have found that the testimony

of the attorney who prosecuted the patent at issue was crucial to that defense.

Several courts have found the deposition of the attorney prosecuting the patent to be crucial

to the defense of inequitable conduct.[46]  This is due to the attorney's direct and instrumental role in

---

[44](...continued)
F.R.D. 429, 438 (E.D. Pa. 1981) ("the Court cannot rule in a vacuum, prior to the deposition, that
every question to be asked will seek to elicit privileged information").

[45]*Alcon Labs.*, 225 F. Supp. 2d at 344 (quoting *Niagara Mohawk Power Corp. v. Stone &
Weber Eng'g Corp.*, 125 F.R.D. 578, 594 (N.D.N.Y. 1989)).

[46]*Plymouth Indus.,* 2006 WL 695458, at *4 ("Because of his role in the prosecution of
[plaintiff's] patents, I am persuaded that [counsel's] deposition is crucial to [defendant's] inequitable
conduct defense.");  *Genal Strap*, 2006 WL 525794, at *2 ("because of his role in the patent
(continued...)

prosecution of the patent before the USPTO.  Because the knowledge and actions of that attorney are chargeable to the applicant, his or her knowledge and mental state are highly relevant to showing any intent to deceive or mislead the USPTO into issuing the patent.

Defendant has shown that Ms. Derusseau prepared and prosecuted Plaintiff's '104 Patent, as well as the Parallel Application.  It alleges as part of its defense of inequitable conduct that she knowingly failed to disclose material references of prior art to the USPTO during prosecution of the '104 Patent.  Due to her role in the patent prosecution, the testimony of Ms. Derusseau may be crucial in determining whether Plaintiff withheld material information from the USPTO or submitted false information with intent to deceive or mislead the examiner into granting the patent.  Defendant has therefore established that the information it could obtain by deposing Ms. Derusseau is crucial to its defense of inequitable conduct.

D.    **Summary**

The Court finds that Defendant, as the party seeking to depose trial counsel for Plaintiff,  has met its burden to show that all three factors of the *Shelton* test have been satisfied. Defendant has shown that the information it seeks from Ms. Derusseau (1) is not available from any other source, (2) is relevant and non-privileged, and (3) is crucial to its defense of  inequitable conduct against the claim for patent infringement.  The Court, therefore, finds that the motion to quash the deposition of Ms. Derusseau should be denied.  The parties and Ms. Derusseau should confer for the purpose of

---

[46](...continued)
prosecution, [counsel's] deposition is crucial to [defendant's] inequitable conduct defense "); *Alcon Labs.,* 225 F. Supp. 2d at 344  ("the prosecuting attorney's mental impressions are crucial to any claim of inequitable conduct in a patent infringement action").

setting a new date for her deposition, pursuant to the subpoena *duces tecum* previously served or one similar to it.

## III.    Motion to Compel Production of Documents

In response to the motion to quash, Defendant has filed its Motion to Compel Production of Documents and Memorandum in Support (doc. 49) pursuant to Fed. R. Civ. P. 37(a).  The motion seeks to compel Ms. Derusseau to produce documents in compliance with the subpoena *duces tecum,* served upon her on April 2, 2009.  Plaintiff and Ms. Derusseau have filed a brief in opposition to the motion.  They argue that the subpoena seeks discovery that is wholly duplicative and unreasonably cumulative of Defendant's First Set of Discovery served on Plaintiff.  They further argue that the subpoena asks for documents that are available from a more convenient source, seeks documents protected by attorney-client privilege or as work product, and places an undue burden and expense upon them.  Plaintiff states that all documents it contends to be privileged have been identified on a privilege log, provided to Defendant on May 8, 2009.

Although the motion purports to rely upon Fed. R. Civ. P. 37(a), the Court finds it is more appropriately governed by Rule 45(c)(2)(B).  Defendant served Ms. Derusseau with a subpoena for her deposition to be taken April 28, 2009.  It also served her with a subpoena to produce documents twelve days earlier, on April 16, 2009.  Pursuant to Rule 45(c)(2)(B), she filed objections (doc. 45) to the subpoena for production.  The subpoena directed her to produce eleven categories of documents.  The instant motion seeks to compel her to produce those documents.

The Subpoena to Produce Documents commanded Ms. Derusseau to produce documents responsive to requests for production, related to the prosecution of the '104 Patent, other patent

applications listing Edward Tobergte as an inventor, or any of the Relevant Patents, including the

Parallel Application.  The subpoena requests production of the following documents:

1.      Patent prosecution files.

2.      Correspondence between counsel and Plaintiff.

3.      Communications between counsel and the USPTO or any foreign or international

office and notes of any discussions with USPTO personnel.

4.      Correspondence with, any third party (patent search vendors, individuals who prepare

drawings, etc.) concerning the preparation of a patent application for, or regarding the

patentability/novelty or other searches.

5.      Legal bills to or payments, records regarding the assigned client/matter numbers for

the Files; and records identifying the individual staff members working or who

worked on the Files.

6.      Prior art references or patents and documents evidencing the date when counsel

became aware of any prior art reference or patent.

7.      Documents evidencing or relating to, referencing, or discussing disclosure or

nondisclosure of any prior art reference to the USPTO.

8.      Notes regarding prior art references or their content, including any analysis of the

patentability of devices disclosed in either the 104 Patent, other patent applications

listing Edward Tobergte as an inventor, or any of the Relevant Patents in view of the

prior art.

9.      Internal notes and memoranda.

10.    Documents evidencing or relating to the inventorship or the evaluation of inventorship of the '104 Patent or any Relevant Patent.

11.    Specimens of any product of Defendant viewed in conjunction with enforcement of the '104 Patent.

For each request, Plaintiff argues that the documents sought from its trial counsel are wholly duplicative and unreasonably cumulative of the discovery requests served upon it. It states that it has, in large part, already produced or is in the process of producing documents responsive to those discovery requests.

Defendant responds that, because she was the prosecuting patent attorney with an independent duty of candor, the files of Ms. Derusseau would contain documents not necessarily present in those of Plaintiff. It further advises the Court that, since the filings of the motion to quash and corresponding motion to compel, Plaintiff has supplemented its earlier production of documents that appear to be related to the prosecution of the '104 Patent. Defendant asserts that the supplemented production, however, fails to include all the information sought from Ms. Derusseau in the subpoena to produce.

Plaintiff and Ms. Derusseau assert five grounds for opposing the requested production. First, the subpoena requests documents that are wholly duplicative and unreasonably cumulative of the discovery sought from Plaintiff. Second, the subpoena requests documents that are available from a more convenient source, i.e., from Plaintiff itself, rather than its trial counsel. Third, the subpoena requests documents that are protected by the attorney-client privilege or as work product. Fourth, Plaintiff and Ms. Derusseau have agreed to produce an additional 400 pages of documents responsive

to discovery requested by Defendant.  Finally, the subpoena for production places an undue burden and expense upon Ms. Derusseau and Plaintiff.

In denying the motion to quash the subpoena for the deposition of Ms. Derusseau, the Court has rejected the first two grounds of these arguments, relating to duplication and a more convenient source.  The Court further finds that Plaintiff and Ms. Derusseau have provided nothing but their own argumentative conclusions to support the last two grounds.  They have pointed to no facts from which the Court could find that their production of 400 additional documents somehow fulfills the purpose of the request for production.  Nor have they submitted any facts to support any finding that the requested production will impose upon them a burden and expense that is "undue."  For the reasons hereinabove stated and those set forth in the motion to compel, the Court finds that the grounds asserted by Plaintiff and Ms. Derusseau are not persuasive.

The Court also finds nothing to enable it to determine the validity of the contention that the requested production would violate an attorney-client privilege or the protection of work product.  In their opposing brief Plaintiff and Ms. Derusseau assert that Plaintiff "produced a privilege log on May 8, 2009, identifying such documents subject to a claim of privilege."[47]  Defendant does not pursue any argument to require production of documents that could be protected.  The Court will therefore not require Ms. Derusseau, in response to the subpoena, to produce to Defendant any documents that have thus been identified as privileged or protected as work product.  Upon her deposition or pursuant to the subpoena for production, as already noted, she may indeed have a duty to answer foundational questions about the documents, e.g., their general subject matter, their purpose, dates of preparation, transmittal and receipt, and identities of persons privy to them.

---

[47]Br. in Opp. to Mot. to Compel (doc. 52) at p. 10.

For the foregoing reasons, the Court sustains the motion to compel in part and denies it in part.  At a time upon which the parties and Ms. Derusseau can agree or as otherwise designated by a subpoena, she shall produce the documents requested by Defendant, except for those identified by Plaintiff's privilege log.

IT IS THEREFORE ORDERED THAT Ginnie Derusseau's Motion to Quash (doc. 43) is denied, as set forth herein.

IT IS FURTHER ORDERED THAT Defendant's Motion to Compel Production of Documents (doc. 49) is sustained in part and denied in part, as set forth herein.

Dated this 3rd day of August 2009, at Kansas City, Kansas.

s/ Gerald L. Rushfelt
Gerald L. Rushfelt
U.S. Magistrate Judge