## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **ED TOBERGTE ASSOCIATES COMPANY** ) <br> **d/b/a GEAR 2000, an Ohio corporation,** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> **v.** ) <br> ) <br> **RUSSELL CORPORATION, a Delaware** ) <br> **corporation, n/k/a RUSSELL BRANDS** ) <br> **LLC, a Delaware Limited Liability** ) <br> **Company,** ) <br> ) <br> **Defendant.** ) | **Case No. 2:08-cv-02290-JWL-GLR** |

## PLAINTIFF'S REPLY TO RUSSELL BRANDS LLC'S INITIAL CLAIMS CONSTRUCTION BRIEF

Ed Tobergte Associates Company d/b/a Gear 2000 ("Gear 2000") submits the following reply brief to Russell Brands LLC's ("Defendant") Claims Construction Brief ("Construction Brief").

## I. INTRODUCTION

Defendant's Construction Brief invites this Court to violate fundamental canons of claims construction law by (i) ignoring the unambiguous language of the Claims and specification of U.S. Patent No. 7,168,104 (the "'104 Patent") and (ii) twisting the true impact and meaning of prosecution history as it relates to the invention disclosed in and contemplated by the '104 Patent. Defendant's Construction Brief attempts to read narrow claim limitations of dependent claims into the broader independent claims. In all practicality, Defendant's Construction Brief supports a claim construction that wholly ignores both preferred embodiments for "breathable foam."

Defendant's Construction Brief accomplishes the above by deriving virtually all of its proposed construction from a misreading of the prosecution history. Defendant's rationale for its construction makes little reference to the Claims themselves, which are the primary source for determining claim meaning, or the specification. For the reasons stated herein, Gear 2000 respectfully requests that this Court ignore Defendant's proposed constructions and adopt the plain and ordinary meaning of the disputed Claims of the '104 Patent.

## II. ARGUMENT

### A.    "Breathable Torso Pad Member"

| Claim Term | Defendant's Proposed Construction |
|---|---|
| Breathable torso pad member | "A torso pad that allows air or moisture to flow through the pad throughout its whole area" |

Defendant's Construction Brief provides no basis, argument or explanation in support of its proposal that the phrase "its whole area" should be read into "breathable torso pad member." The Claims, specification and prosecution history do not, either explicitly or implicitly, teach or suggest that the torso pad member be breathable "throughout its whole area." To the contrary, the Claims expressly state that the torso pad member be breathable "substantially through its area." As is discussed in greater detail below, the structural elements of the '104 Patent (e.g., hard inner layer with holes, closed cell foam with perforations or made of beads fused together) provide a clear understanding of the extent of the breathability of the torso pad member. Since the whole area of the torso pad member is not breathable, due to its structure, Defendant's proposed functional limitation of "its whole area" is clearly unsupportable. Defendant's construction only invites more ambiguity into the already plain and ordinary meaning of the claim terms.

Defendant's proposed construction confuses the pad's breathability with its area. The

October 19 Response cited by the Defendant merely refers to each layer being breathable, so that when combined together into a multi-layered torso pad, the pad's overall construction is breathable as a whole, i.e., through each layer.  Defendant's proposed construction that the pad be breathable as whole is totally separate and distinct from the recitation that the padding being breathable substantially throughout its area.

### B.    "Breathable Foam"

| Claim Term | Defendant's Proposed Construction |
|---|---|
| breathable foam | "A padding material that allows the flow of air or moisture through the padding itself and not merely through the hole or cutout in the padding.  Breathable foam does not include a closed cell type foam."[1] |

As anticipated, Defendant's rationale for this proposed construction defies the clear and unequivocal terms, figures, meaning and intent set forth in the claims, specification and prosecution history.  Defendant's construction ignores the explicit and essential language of the Claims and specification in an effort to twist the meaning of the prosecution history to its own ends (i.e., a construction of the '104 Patent that does not cover its XTreme Lite line of shoulder pads).

Even though Claims 7, 17 and 22 disclose "closed cell foam" and the specification specifically sets forth two preferred embodiments, both incorporating "closed cell foam," Defendant's Construction Brief seeks to convince this Court that Gear 2000 somehow disclaimed "closed cell foam" from the definition of "breathable foam" during prosecution of the '104

---

[1]  Amazingly, Russell's Claim Construction Brief provides three (3) *additional*/incongruous definitions for "breathable foam" on pp. 11-12 of its Construction Brief.  (*See, e.g.*, "The plain and ordinary meaning of 'breathable foam' is a foam that breathes" and breathable foam is "a foam that allows air or moisture to flow through the foam material itself" and "the specification . . . implicitly defines 'breathable foam' as circulating air in three dimensions and allowing evaporation, body cooling, and drying.").

Patent.  Again, Defendant is wrong.

Defendant's construction must fail because it is wholly inconsistent with the Claims, the specification and the prosecution history.

1.    **Defendant's Rationale for Its Proposed Construction of "Breathable Foam" Wholly Ignores the Clear and Unambiguous Language and Structure of the Claims.**

Russell asserts that this Court should construe "breathable" foam narrowly so as to exclude "closed cell type foam" and include only foam that is breathable "through the foam material itself."  The Claims do not support this construction.[2]

Yet, Defendant asserts that its proposed construction is supported by the Claim language because the '104 Patent's Claims disclose "first and second layers of breathable foam" and **not** "breathable layer[s] of foam."  This is a distinction without a difference, especially when viewed in the context of the Claims themselves.

Under the doctrine of claim differentiation, an independent claim should not be construed as containing a limitation that is explicitly called out in one of its dependent claims.

> There is presumed to be a difference in meaning and scope when different words or phrases are used in separate claims.  To the extent that the absence of such difference in meaning and scope would make a claim superfluous, the doctrine of claim differentiation states the presumption that the difference between the claims is significant.

*Comark Communications Inc. v. Harris Corp.*, 156 F.3d 1182, [] (Fed. Cir. 2001).  "The presumption [that different claims have different scope] is especially strong when the limitation in dispute is the only meaningful difference between an independent and dependent claim."

---

[2] In fact, Defendant's proposed construction does not even support itself because the Brock foam (embraced by Defendant as the *only* type of foam material that can make up the two inner layers of foam padding) is made up of "closed cell foam" that is made into beads and fused together.  The foam material in Brock is no different than the foam material in a conventional closed cell foam.  It "breathes" in the same way a conventional closed cell foam breathes, by the flow of air around the padding material and through the open spaces naturally occurring when

*SunRace Roots Enter. Co. v. SRAM Corp.*, 336 F.3d 1298, 1303 (Fed. Cir. 2003); *see also RF Delaware, Inc. v. Pacific Keystone Technologies, Inc.*, 326 F.3d 1255, 1264 (Fed. Cir. 2003) (district court erred in requiring claim term *filter bed* in claim 1 to include a flocculation layer and a transitional layer, since the mention of a flocculation layer is the only distinction between claims 7 and 1 and the mention of a transitional layer is the only distinction between claims 12 and 1).

Notwithstanding the inherent illogic of Defendant's proposal that "breathable foam" excludes "closed cell type foam," its rationale appears to seek a meaning for "breathable foam" that is formed of a Brock-style of foam. (*See* Defendant's Construction Brief, p. 12). Brock-style foam is a foam formed of "*closed cell foam*" shaped into small beads and fused together. (*See* 3:35-46).

Defendant further asserts there is no reason to construe "breathable foam" differently in Claim 18 than in Claim 11. Russell misses the point. "Where some claims are broad and others narrow, the narrow claim limitations **cannot** be read into the broad whether to avoid invalidity or to escape infringement." *Degree & Co. v. International Harvester Co.*, 658 F.2d 1137, 1141 (7th Cir. 1981), *cited with approval in Kalman v. Kimberely-Clark Corporation*, 713 F.2d 760, 770 (Fed. Cir. 1983).

Independent Claims 1 and 11 both disclose "first and second layers of breathable foam." (*See* 6:2-3 and 6:67-7:1). Claim 7 (dependent to Claim 1) and Claim 17 (dependent to Claim 11) both disclose that "layers of breathable foam are formed of **closed cell foam** beads fused together." (*See* 6:47-48 and 7:34-35) (emphasis added). Independent Claim 11 cannot be construed as containing the limitation that is explicitly set out in its dependent Claim 17; this

---

rounded beads are fused together.

presumption is especially strong because closed cell foam, the limitation in dispute, is the only meaningful difference between independent Claim 11 and dependent Claim 17.

> **2.    Defendant's Request That This Court Ignore One of the Two Embodiments for "Breathable Foam" Set Forth in the Specification is Unsupportable.**

Defendant's Construction Brief asks this Court to ignore the following embodiments described in the '104 specification for "breathable foam":

> Alternatively, as shown in FIG. 13, the **first and second foam layers 44 and 46 can be conventional** open or **closed cell foams**, each layer being punctured with multiple holes **58** therethrough.  **One layer 44** or **46** could be open cell foam and the other layer **44** or **46 can be closed cell foam** to maximize impact resistance to the athlete.  The puncture holes **58** are smaller in diameter than the hard layer openings **50**.  Preferably, several puncture holes **58** align with an opening **50** to allow air and moisture to pass through the foam body.

3:47-56 (emphasis added).  The specification expressly contemplates two embodiments that incorporate closed cell foam for "breathable foam."  Defendant cites to *Johns Hopkins University v. Cellpro, Inc.*, 152 F.3d 1342, 1355 (Fed. Cir. 1998), for the proposition that "[a] patent claim should be construed to encompass at least one disclosed embodiment in the written description portion of the patent specification."  The facts of *Johns Hopkins* are distinguishable from the present case on this critical point.  In *Johns Hopkins*, the specification of the patent contained only one embodiment of the phrase at issue.  *Id.*  The '104 Patent specification contains two.

Further, in *Johns Hopkins*, the Federal Circuit unequivocally stated that "[a] claim construction that does **not** encompass a disclosed embodiment is thus 'rarely, **if ever**, correct and would require highly persuasive evidentiary support.'" *Id., citing to Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996).  Indeed, claims "must be construed so as to be consistent with the specification, of which they are a part . . ." *Merck & Co. v. Teva Pharms, USA, Inc.*, 347 F.3d 1367 1371 (Fed. Cir. 2003).

Moreover, Figure 13 of the specification clearly identifies closed cell foam with

perforations as being "breathable foam."  Figures in the specification are important aids to understanding the invention disclosed in a patent.  When an inventor applies a claim term to a drawing, the drawing is a crucial means of showing of the meaning that the inventor intended to apply to such claim term.  *See, e.g., International Rectifier Corp. v. IXYS Corp.*, 361 F.3d 1363, 1373 (Fed. Cir. 2004).

As discussed more fully below, the prosecution history does **not** show that Gear 2000 disclaimed the use of closed cell foam.

### 3.    The Prosecution History Does Not Support Russell's Contention That Gear 2000 Disclaimed the Use of Closed Cell Foam.

Defendant erroneously asserts that "[i]n the prosecution of the patent, Gear 2000 relied heavily upon the distinction between, on the one hand, a foam padding material that allows air or moisture to flow *through the padding material itself* and, on the other hand, a padding material that allows airflow only *through a hole* in the material."  In support of this, Defendant (i) presents incomplete portions and inaccurate interpretations of the June 30 Office Action and Gear 2000's October 19 Response and (ii) wholly misconstrues the meaning of the word "padding" as used in Gear 2000's October 19 Response.

In the June 30 Office Action, the Examiner rejected Claim 11 on the following basis:

> Bassett . . . disclosed a protective shoulder pad (20) that includes a foam body having a hard rigid inner layer (36) being positioned between first and second breathable layers of foam material (38, 42) in a sandwich configuration ***and has a breathable fabric layer (34, 35) that is secured about the periphery of the pad, col. 3, lines (sic) 1-col. 4, line 15 as shown in Fig. 4.***  Further, the hard rigid inner layer includes spaced openings/perforations therethrough as shown in figure 5 which can inherently be made of plastic.  Furthermore, the first and second layers are breathable with openings that align with the perforation of the inner layer, col. 4, lines 11-15.

Ex. D of Defendant's Construction Brief, p. 2, ¶ 2 (emphasis added).  The ***bolded and italicized*** portion of the above quotation was omitted from Defendant's brief for a reason; it demonstrates,

in part, the full scope of the Examiner's rejection and, therefore, what exactly Gear 2000 was responding to in its October 19 Response. The discussion was not, as Defendant would have this Court believe, that Gear 2000 disclaimed "closed cell foam" from the meaning of "breathable foam" to avoid a finding of obviousness in light of Bassett. Gear 2000 never amended the phrase "breathable foam" in its independent or dependant claims. Instead, the thrust of the discussion between Examiner and Gear 2000, and the reason for Gear 2000's amendment, related to "further emphasiz[ing] the breathability of the pad **as a whole.**" (*See* Defendant's Ex. C, October 19 Response, p. 10, ¶ 3) (emphasis added). Defendant omitted the ***bolded and italicized language*** above to convince this Court otherwise. Its argument should be ignored.

Gear 2000's October 19 Response is a rebuttal to the Examiner's *interpretation* of Bassett (i.e., the Examiner's assertion that Bassett disclosed a breathable pad with every layer thereof being breathable and, therefore, rendered obvious the '104 Patent) and not, as Russell asserts, a document disclaiming closed cell foam (its two preferred embodiments). (*See* '104 Patent Figs. 12 and 13 and 3:35-43 and 3:47-56). This distinction is critical because the bulk of Russell's claim construction relies upon this mistaken interpretation of the prosecution history.

Gear 2000's October 19 Response rightly disagreed with the Examiner's *interpretation* of Bassett as being a breathable pad that allows air and moisture transfer through the torso pad member as a whole. Clearly, Gear 2000 did **not** disclaim closed cell foam:

> Bassett discloses a **nonbreathable** pad having layers of **nonbreathable** materials. Padding layers 38 and 42 are disclosed as being closed cell type foam, such as VNS, which does not allow air and moisture transfer. ***The layer 34 is disclosed as being extremely durable and water-resistant and is applied across the exterior surface of the outer and inner layers. Col. 3, lines 49-52. As the detailed description goes on to state, "[b]y fully coating the pad, all surfaces would be sealed and impervious to external pentrants (sic) as water and sweat." Col. 3, lines 52-54.***

Defendant's Ex. C, p. 11, ¶ 1.

Furthermore, Gear 2000's amendment of Claim 16 (current Claim 11) in its October 19 Response makes perfectly clear that it did **not** disclaim closed cell foam. If Gear 2000 disclaimed closed cell foam, it would have deleted it from Claims 7, 17 and 22. Or, at a minimum, it would have rewritten independent Claims 1 and 11 so as to not render superfluous Claims 7 and 17. Instead, Gear 2000's amendments sought only to clarify the breathability of the torso pad member, **as a whole**; i.e., the foam layer, the hard inner layer and the outer layer are all breathable. Nothing in Gear 2000's amendments or its remarks on pages 10-14 of its October 19 Response even suggest, let alone expressly state, that Gear 2000 disclaimed the use of closed cell type foam. Instead, Gear 2000's focus was its sound disagreement with the Examiner's interpretation of Bassett:

> The object of the Bassett patent is to provide a pad that cushions not only the wearer but also another person/player coming into contact with the wearer. Col. 1, lines 3-51. Breathability and moisture transfer **across the pad** are not contemplated. In fact, the Bassett patent discloses the opposite: a **nonbreathable** pad **incapable** of air and moisture transfer across the pad's area.

> At col. 4, lines 11-15, the Bassett patent contemplates including "cutouts for ventilation or attachment of accessories." *As this portion of the disclosure makes clear, such cutouts are not made to provide overall breathability and moisture transfer. In fact,* modifying the Bassett pad to include a cutout that would allow aid and moisture transfer across the pad's area would effectively eliminate the pad because the pad would become one big cutout. *Instead, as the disclosure states, the cutouts allow for straps, hooks and attachment of other pad accessories through the cutout.* Nothing suggests that the cutouts would make the padding breathable. Put another way, the cutout will allow ventilation through the cutout only, but the padding still would not provide any air or moisture transfer. As discussed above, the padding is explicitly disclosed as being sealed and impervious to water and sweat.

> Accordingly, because Applicant's breathable pad that allows air and moisture transfer therethrough is not disclosed or suggested by the Bassett patent, the rejection should be overcome.

Defendant's Ex. C, p. 10, ¶ 4, and p. 11, ¶¶ 2-3.[3]

After setting forth its disagreement with the Examiner, Gear 2000 states the basis for its

amendments is to more clearly recite a breathable torso pad, not a breathable foam:

> Claims 6, 16 and 27 have been amended to recite a breathable pad as discussed in detail above with respect to amended claim 1. For the reasons discussed above with respect to Bassett as well as the reasons discussed here with respect to Beland, neither of these references, whether taken singularly or in combination, disclose or suggest applicant's invention as recited in amended claims 5, 6, 16 and 27. The rejection should be withdrawn.

*Id.*, p. 13, ¶ 2. In Gear 2000's September 20, 2006 Amendment, the only additional amendment

to Claim 16 (current Claim 11) was to add the phrase "of said shoulder pads" in order "to more

clearly identify that the torso pads are part of shoulder pads." Ex. A attached hereto, September

20, 2006 Amendment and Remarks of Gear 2000, pp. 1 and 6. Again, Gear 2000 made no

express or implied disclaimer of the use of closed cell foam.

On October 16, 2006, the Examiner issued the USPTO's Notice of Allowance of Claims

5 (Claim 1) and 7-27 (including current Claim 1 and 11's dependent claims that expressly

disclose a "closed cell foam" embodiment) for the following reason:

> Claims 5 and 7-27 are allowable because the prior art does not teach or suggest the recitation therein including a football shoulder pad having a **breathable** torso pad that has a front portion, a back portion and a shoulder portion such that first and second layers of **breathable** foam layers are secured on opposing surfaces of a hard inner layer in a laminate configuration with the hard inner layer having spaced apart openings therethrough **to allow air to flow through the torso pad**.

Defendant's Ex. E, Notice of Allowability, dated October 12, 2006, p. 2, ¶ 4 (emphasis

added).

---

[3] Again, the **bold and italicized** portions above represent Defendant's omissions from its brief. These portions provide the necessary background to understand exactly how and to what Gear 2000 responded. Nothing in this discussion, or in the amended claims, demonstrates a narrowing of the meaning of "breathable foam." Instead, the discussion above makes clear that Gear 2000's response to the Examiner's raising of Bassett was to say: Bassett is not a breathable pad, as a whole, and neither are the various layers of the pad, including the padding.

### 4. Defendant Misconstrues Critical Terms in the Prosecution History

#### (a)    "Padding" v. "Foam"

Russell's argument that Gear 2000 disclaimed closed cell type foam in its October 19 Response relies, in large part, upon its redefining the term "padding," as used in the October 19 Response, to mean "foam." Russell's contortion is clever but wrong. These two words are not interchangeable, even though Russell's analysis suggests otherwise. (*See* Defendant's Construction Brief, pp. 12 and 14). As used in the October 19 Response, the word "padding" does not refer solely to the "foam" layers 38 and 42 of Bassett. This is made clear in multiple places throughout the October 19 Response, including the following statement: "As discussed above, the padding is explicitly disclosed as being sealed and impervious to water and sweat." Defendant's Ex. C, p. 11, ¶ 2. The "padding" cannot mean foam layers 38 and 42 because the disclosure relating to sealing the Bassett pad refers, at a minimum, to the outer and inner layers 34 and 35. *See, e.g.*, Defendant's Ex. B, US Patent No. 5,781,935, 3:42-43 ("the outer abrasion resistant coating **34** is spray coated, or moldably applied, across the front surface of the pad) and 3:49-54 ("The coating **34**, which is extremely durable and water resistant might also be applied across exposed surface, e.g., outer coating **34** as well as inner coating **35** shown in fathom. By fully coating the pad, all surfaces would be sealed and impervious to such external penetrants as water and sweat.")

With this clarification in mind, Russell's assertion that "Gear 2000 unambiguously and explicitly stated that its invention was limited to layers of 'breathable **foam**'" (i.e., no closed cell foam) must fail because the October 19 Response actually addresses Gear 2000's "emphasiz[ing] the breathability of the pad as a whole," as more fully set forth above.

---

4844-5812-0452.1

(b)    **Breathable Layers of Foam v. Breathable Foam**

In further support of its argument that Gear 2000 disclaimed "closed cell foam", Defendant asserts that the Examiner distinguished Bassett "as having '*breathable layers* of foam' (*not* 'breathable foam'), which layers were made breathable by perforations or openings." Defendant's Construction Brief, p. 13. Defendant asserts that "[t]his distinction is critical to this case because Russell pads at issue are like those of Bassett. The Russell pads include layers of closed cell foam with openings or cutouts in them for ventilation." Defendant's Construction Brief, p. 15. Russell admits that this critical element of Claim 11 and its dependent Claim 18 read upon the inner foam layers of its pad. "Where some claims are broad and others narrow, the narrow claim limitations cannot be read into the broad whether to . . . escape infringement." *Deere & Co. v. International Harvester Co.*, 658 F.2d 1137, 1141 (7th Cir. 1981), *cited with approval in Kalman v. Kimberly-Clark Corporation*, 713 F.2d 760, 770 (Fed. Cir. 1983). Defendant cannot escape infringement by seeking to read the limitation of Claim 17 into Claim 11.

According to the clear and inarguable language of the prosecution history (and the claims and specification, including Figure 13), this is a distinction without a difference. Indeed, the Examiner makes this plain in the prosecution history by using "breathable layers of foam" and "foam breathable layer" (Ex. [6-30-05 Office Action], p. 4 ¶ 2) interchangeably.

(c) **Cutouts v. perforations**

Defendant seeks to convince this Court that the word "cutouts," as used in the Bassett patent and during the prosecution history, is the same as "perforations" as used in the '104 patent and throughout the prosecution history. "Note that the Examiner identified Bassett as having . . . layers [] made breathable by perforations or openings." Defendant's Construction Brief, p. 13.

In addition, Defendant's argument that the cutouts of Bassett would render the '104 Patent invalid is based upon the fundamentally false premise that a "cutout" is a "perforation."

> The Russell pads include layers of closed cell foam with openings or cutouts in them for ventilation . . .. Moreover, to construe "breathable foam" to include a perforated closed cell foam would bring Bassett within the scope of the claims, contrary to yet another fundamental principal of claims construction.

Defendant's Construction Brief, p. 15. Defendant's pad does not contain cutouts through each and every layer of its football pad, as is required under Bassett's definition of cutout.

The "cutout" in Bassett is not the "perforation" in the '104 Patent. As described in Bassett, and successfully argued by Gear 2000 during the prosecution of the '104 Patent, the "cutout" contemplated by Bassett is a cutout "through the various layers **34, 35, 36, 38,** and **42** [four of which are impervious to air and water]. Additionally, such cutouts could be performed and aligned in the layering before assembly." Defendant's Ex. B, 4:11-15. The cutout is a cutout of each and every layer of the Bassett pad, all of which are "aligned." A "perforation" is a hole made in both the first and second layers of the closed cell foam disclosed in the '104 Patent's specification, claim language and Figures. Russell's refusal, or inability, to distinguish these two concepts is further proof that its proposed construction is disingenuous and deserves little weight.

### C.    "Airflow Through"

| Claim Term | Defendant's Proposed Construction |
|---|---|
| Airflow through | "Circulation of air or moisture, sufficient to effectively ventilate body heat or perspiration from the wearer, through one side of the torso pad, passing into one surface and out of the opposing surface of the padding material of the first and second foam layers, then passing out of the other side of the torso pad." |

Defendant submits that the plain meaning of the phrase "airflow through" is simply a

flow of air.  However, with little to no explanation, Defendant rejects the plain and ordinary meaning to assert that "the plain meaning of the term 'airflow' is of limited help in construing the term as used in the claim."  Instead, Defendant asserts that "airflow through" is functional language and, therefore, must be construed by the prosecution history.  Defendant is wrong.

When the claims and specification of an invention describe such invention using a description of its structure, the claim cannot be limited by reference to functional language. *See Schwing GmbH. v. Putzmeister Aktiengesellchaft*, 305 F.3d 1318 (Fed. Cir. 2002).  In this instance, the claims of the '104 Patent are sufficiently described in structural terms so that it is not necessary to read into the patent functional limitations.

Further, Defendant attempts to narrow the scope of the claims by reading limitations from the specification into the claims.  "[I]t is improper to limit the scope of a claim to the preferred embodiment or specific examples disclosed in the specification." *Broadcast Innovation, LLC v. Echostar Communications Corp.*, 240 F. Supp. 2d 1127, 1132 (D. Colo. 2003), *citing to Ekchian v. Home Depot, Inc.*, 104 F.3d 1299, 1303 (Fed. Cir. 1997).  Indeed, absent some ambiguity in the claim language, or a specific definition used by the inventor to replace the ordinary meaning of claim language, no basis can exist for adding to a claim term a limitation shown in the specification. *See, e.g., Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 375 F.3d 1341, 1350-1351 (Fed. Cir. 2004).  "[I]t is axiomatic that . . . the court will not limit claim terms to a preferred embodiment described in the specification." *SanDisk Corp. v. Memorex Products, Inc.,* 415 F.3d 1278, 1286 (Fed. Cir. 2005).

Finally, the concept that heat and perspiration "ventilate from" the wearer demands a construction that implies the active wicking or pulling of sweat and heat from the wearer's body. This is inconsistent with the passive phrasing of "allow airflow through" found in the Claims.

Gear 2000 submits that the clear and unambiguous language of the intrinsic evidence commands that "airflow through" be given its plain and ordinary meaning.

### D.    "Substantially Throughout Its Area"

| Claim Term | Defendant's Proposed Construction |
|---|---|
| Substantially throughout its area | "Essentially everywhere in the torso pad" |

Defendant asserts the following in support of its construction:

> For the torso pad to be breathable "as a whole," as emphasized by Gear 2000, there must be "airflow through" the torso pad "substantially throughout its area." This functional limitation results only from using "breathable foam," which permits circulation and movement of air **through the padding material itself, and not just through perforations, holes, or cutouts in the padding, as Gear 2000 represented to the USPTO**.

Defendant's Construction Brief, p. 20  (emphasis added).  As already addressed above, the "as a whole" limitation espoused by Defendant is insupportable.  On this basis, its rationale for its construction must fail.  Further, as already discussed, "breathable foam" includes a "closed cell foam."  Even the construction of "breathable foam" proposed by Defendant is made up of a closed cell foam.  Air and moisture does not move *through* the foam padding material itself. Like closed cell foam with perforations, the air and moisture move around the open areas created by the closed cell foam beads being fused together.  On this basis alone, Defendant's proposed construction is untenable.

Defendant seeks to tie in its distortions of the prosecution history (e.g., its incorrect meaning of the word "padding" as used in the prosecution history and the basis for Gear 2000's amendments, both as discussed at pp. 7-11 *infra*) as further evidence that airflow must be "essentially everywhere."  Defendant's construction ignores the clear and unequivocal structure of the '104 Patent.  If this Court were to adopt Russell's claim constructions for the disputed

terms, air would not flow "essentially everywhere" through the torso pad member for the reasons

stated in Gear 2000's claim construction brief at p. 17:

> While this hard inner layer contains "spaced apart openings", a construction of "essentially everywhere in the torso pad" does not account for a hard inner layer that contains a significant amount of non-breathable surface area (particularly in the shoulder portion).  Defendant's proposed construction that it be "essentially everywhere" conflicts with the clear and unambiguous language of the Claims and specification.  (See FIG. 11).
>
> Further, the "foam layers" that are adhered to either side of the hard inner layer do not contemplate airflow "essentially everywhere" through each foam layer, either.  By example only, FIG. 13 identifies that the first and second foam layers 44 and 46 can be conventional closed cell foam punctured with multiple holes 58 therethrough.  (See 3:470-52).   Again, Defendant's proposed construction of "essentially everywhere" cannot be reconciled with a closed cell foam with holes punctured therethrough because a significant portion of the surface area of the closed cell foam remains non-porous.

Gear 2000's claim construction brief, p. 17.

The hard inner layer and closed cell foam described in the specification and Claims set

forth sufficient boundaries for determining the meaning of "substantially throughout its area."

Defendant's construction ignores the clear and unambiguous description, and structure, of the

'104 Patent as discussed above.  "[S]ubstantially throughout its area" should be given its plain

and ordinary meaning, in light of the Claims and specification.

### E.  Means for Releasably Securing

| Claim Term | Defendant's Proposed Construction | Gear 2000's Proposed Construction |
|---|---|---|
| Means for releasably securing | "A strap and a loop, the strap attached at one end to the **upper end of the cap pad**, the loop secured to the shoulder portion of the torso pad, where a free end of the strap is adapted to extend through the loop and be secured to itself (the strap) by hook and loop tape." (emphasis | "A strap and a loop, the strap attached at one end to the cap pad, the loop secured to the shoulder portion of the torso pad, where a free end of the strap is adapted to extend through the loop and be |

| Claim Term | Defendant's Proposed Construction | Gear 2000's Proposed Construction |
|---|---|---|
| | added) | secured to itself (the strap) by hook and loop tape and equivalents thereto.." |

Defendant's proposed construction inserts the narrowing limitation that the strap be attached "at one end to the **upper end of the** cap pad." This proposed limitation is in clear and direct contravention to dependent claim 20 which provides as follows:

> Football shoulder pads as claimed in claim 12, wherein said means for releasably securing said cap pad at said shoulder portion includes a strap and a loop, said strap attached at one end to said cap pad, said loop secured to said shoulder portion, a free end of said strap adapted to extend through said loop into secure engagement with itself.

Defendant's Ex. A, 8:3-8. In this instance, Claim 20 sets forth a broader scope of the structure for Claim 12's means language. In this instance, a "particular embodiment[] appearing in a specification will not be read into the claims when the claim language is broader than such embodiments." *Electro Med. Sys. S. A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1054, 32 U.S.P.Q.2d 1017, 1021 (Fed. Cir. 1994). "[I]t is improper to limit the scope of a claim to the preferred embodiment or specific examples disclosed in the specification." *Broadcast Innovation, LLC v. Echostar Communications Corp.*, 240 F. Supp.2d 1127, 1132 (D. Colo. 2003), *citing to Ekchian v. Home Depot, Inc.*, 104 F.3d 1299, 1303 (Fed. Cir. 1997).

**F.    Means for Securing**

| Claim Term | Defendant's Proposed Construction | Gear 2000's Proposed Construction |
|---|---|---|
| Means for securing | "A nylon covering that encloses two cap pads with a stitched area separating the two pads to form a hinge, which covering has an | "A cap pad that has an elastic strap stitched to its lower end in a position to extend across the width of the lower cap pad and |

| Claim Term | Defendant's Proposed Construction | Gear 2000's Proposed Construction |
|---|---|---|
| | elastic strap stitched to its outside edges adjacent the lower end of the lower cap pad in a position to extend across the width of the lower cap pad." | equivalents thereto.." |

Gear 2000 objects to Russell's proposed construction because it inserts several narrowing limitations that are unnecessary to recite the function. "'Structure disclosed in the specification is "corresponding" structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim.'" *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1208 (Fed. Cir. 2002) (*quoting B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997)). Here, the phrase "nylon covering that encloses two cap pads with a stitched area separating the two pads to form a hinge" is not a corresponding structure because it is not linked to the function for "means for securing."

G.    **Means for Accessorizing**

| Claim Term | Defendant's Proposed Construction | Gear 2000's Proposed Construction |
|---|---|---|
| Means for accessorizing (Claim 15) | "A screw extending through the outer arch and secured to the outer arch by a t-nut which extends into the outer arch from the inner surface of the outer arch." | "A screw extending through the outer arch and secured to the outer arch by a t-nut which extends into the outer arch from the inner surface of the outer arch and equivalents thereto.." |

Gear 2000 does not dispute Defendant's construction for "means for accessorizing" as set forth in Claim 15.

H.    **Means for Accessorizing**

| Claim Term | Defendant's Proposed Construction | Gear 2000's Proposed Construction |
|---|---|---|
| Means for accessorizing | "Extruded vinyl or plastic flaps positioned adjacent the lower | "A screw extending through the outer arch and secured to the outer |

| Claim Term | Defendant's Proposed Construction | Gear 2000's Proposed Construction |
|---|---|---|
| (Claim 16) | edge of each torso half with slots and/or holes through the flaps for receiving attachments hooked therein, which flaps are riveted across their length adjacent the flap's top edge, with the rivets extending through the outer foam layer to the inner plastic layer." | arch by a t-nut which extends into the outer arch from the inner surface of the outer arch and equivalents thereto and/or extruded vinyl or plastic flaps riveted across the length thereof and adjacent each flap's top edge through the outer foam layer to the inner plastic layer with slots and/or holes therethrough and equivalents thereto." |

Russell's construction of the "means for accessorizing" is too narrow. The "means for accessorizing" includes the accessory attachments which are referenced by numeral 60 as shown in Figures 2 and 10 and numeral 61 as shown in Figure 9 and are described in the specification at Col 3, line 65 - col. 4, line 11 and col. 4, lines 20 - 27, as well as equivalents thereof. 35 U.S.C. 112, para. 6. Specifically, the equivalents should include attachments that allow shoulder pad accessories, such as neck rolls and rib protectors, to be attached to the shoulder pads. Col. 4, line 6 and col. 4, line 24.

## CONCLUSION

Defendant's rationale for its proposed constructions makes even less sense that its proposed constructions. For the reasons stated herein, Gear 2000 respectfully requests that this Court construe the disputed claim terms to give them their plain and ordinary meaning.

Respectfully submitted this 3rd day of August, 2009.


By_*s/Ginnie C. Derusseau*_____
   Ginnie C. Derusseau #16,988
   James J. Kernell, #19,559
   Erickson, Kernell, Derusseau
   & Kleypas, LLC
   800 West 47th Street, Suite 401
   Kansas City, Missouri 64112
   Telephone:  (816) 753-6777
   Facsimile:  (816) 753-6888
   Email:  jkernell@kcpatentlaw.com
   Email:  ginnied@kcpatentlaw.com

   John P. Passarelli, NE #16018
   Stephen J. Pedersen, NE #22465
   Kutak Rock LLP
   1650 Farnam Street
   Omaha, NE 68102
   Telephone:  (402) 346-6000
   Facsimile:   (402) 346-1148
   Email:  john.passarelli@kutakrock.com
   Email:  stephen.pedersen@kutakrock.com

   ATTORNEYS FOR PLAINTIFF
   ED TOBERGTE ASSOCIATES COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2009, I served via email and US mail the foregoing

**PLAINTIFF'S REPLY TO RUSSELL BRANDS LLC'S INITIAL CLAIMS CONSTRUCTION BRIEF** to the following:


Russell S. Jones, Jr. KS #70814
Richard P. Stitt KS #14268
POLSINELLI SHUGHART PC
120 W 12th Street, Suite 1600
Kansas City, MO 64105
Telephone:  816-421-3355
Facsimile:  816-374-0509
Email:  rjones@polsinelli.com
Email:  rstitt@polsinelli.com

and

Paul M. Sykes
Joel M. Kuehnert
Nathan W. Johnson
Edward J. Everitt
Bradley Arant Boult Cummings LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL  35203
Telephone:  205-521-8000
Facsimile:  205-521-8800
Email:  psykes@ba-boult.com
Email:  jkuehnert@ba-boult.com
Email:  njohnson@ba-boult.com
Email:  eeveritt@ba-boult.com



s/
Stephen J. Pedersen

4844-5812-0452.1